## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CHRISTOPHER SMITH, S.N., a Minor, by DONNAYE NOLAND, Guardian, and L.R., a Minor, by MARIA C. RIOS, Guardian,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE SCHOOL DISTRICT OF PHILADELPHIA, THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA, and PENG CHAO,**<br><br>Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Christopher Smith, individually and in his capacity as President of the Board of Trustees of Philadelphia Montessori Charter School ("PMCS"), S.N., a minor, by and through their parent and natural guardian Donnaye Noland, and L.R., a minor, by and through their parent and natural guardian Maria C. Rios (together, the "Student Plaintiffs"), by and through their undersigned counsel, bring this civil rights action pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and other applicable federal and state law against The School District of Philadelphia ("Philadelphia SD"), The Board of Education of The School District of Philadelphia ("BOE") (together, the "School District"), and Peng Chao,

individually and in his official capacity as Chief of the Philadelphia SD Charter

Schools Office ("CSO"), (collectively, the "District Defendants"), and, in support

hereof aver as follows:

## INTRODUCTION

1.      This civil rights action challenges the unconstitutional and unlawful

administration of the charter school renewal process by the District Defendants.

Through the implementation of arbitrary, internally developed, and inconsistently

applied evaluation methodology, the District Defendants have recommended that

the charter of Philadelphia Montessori Charter School ("PMCS") not be renewed,

thereby placing hundreds of public-school students at imminent risk of losing access

to the only public Montessori educational program in the City of Philadelphia and

depriving them of important constitutional and statutory rights.

2.      This case is not about educational policy or the wisdom of charter

schools. It is about whether a public school district may employ an arbitrary,

internally developed, and concededly flawed evaluation process to recommend the

closure of a public charter school serving predominantly Black or African American

students and a significant population of students with disabilities, notwithstanding

its own acknowledgment that the process lacks transparency, consistency, and

objective standards. Plaintiffs allege that the United States Constitution, federal

civil rights statutes, and the Pennsylvania Constitution answer that question in the

negative.

3.      PMCS currently serves approximately 250 students residing in Philadelphia. Nearly ninety percent (90%) of its students are Black or African American, approximately eighty-six percent (86%) are economically disadvantaged, and approximately twenty percent (20%) are students with disabilities who receive specialized instruction, accommodations, and related services. For many of these students and their families, PMCS is not merely another public school—it is the educational community they deliberately selected because of its unique Montessori instructional model, individualized learning environment, small-school setting, and demonstrated ability to meet their educational needs. PMCS is the only public Montessori charter school in Philadelphia, offering an educational program unavailable elsewhere within the School District.

4.      Rather than evaluating PMCS under objective, transparent, and consistently applied standards, the District Defendants employed an internally developed "Performance Framework" that relies upon discretionary weighting systems, comparator-school methodologies, and evolving academic metrics that are not prescribed by law. The District Defendants continued to utilize that methodology despite their own recognition that it lacked transparency, consistency, and clearly defined academic benchmarks; despite the findings and recommendations of an independent investigation conducted by Ballard Spahr LLP; despite the District Defendants' ongoing efforts through "Project RiSE" to redesign and replace the very evaluation framework used to recommend PMCS' nonrenewal;

3

and despite their knowledge that the challenged methodology produced arbitrary, inconsistent, and inequitable results.

5. The Student Plaintiffs allege that the District Defendants' actions violate federal and state law because the District Defendants knowingly and intentionally implemented and maintained an arbitrary and inconsistently applied renewal methodology; knowingly continued to employ evaluation criteria they acknowledged required substantial revision; intentionally ignored the foreseeable discriminatory consequences of that methodology upon PMCS and its predominantly Black or African American student population; failed to provide meaningful consideration of the unique impact that nonrenewal would have upon students with disabilities; and otherwise deprived Plaintiffs of rights secured by the United States and Pennsylvania Constitutions and federal civil rights statutes.

6. Unless enjoined, the District Defendants' actions will deprive the Student Plaintiffs of continued access to their existing public educational program, disrupt their educational continuity, separate them from established teachers, classmates, and support systems, interfere with disability-related services and accommodations provided to students with disabilities, and inflict irreparable educational and constitutional injuries that cannot be adequately remedied through monetary damages alone. The threatened loss of PMCS would also dismantle an educational community uniquely designed to serve the needs of its students and would irreversibly disrupt years of educational progress and established relationships.

7.      Plaintiffs therefore bring this action pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Pennsylvania Constitution, seeking declaratory and injunctive relief to prevent the District Defendants from implementing the challenged charter renewal recommendation and the unconstitutional and unlawful renewal process upon which it is based, together with compensatory damages, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## PARTIES

8.      PMCS is a Pennsylvania nonprofit corporation, operating as a public charter school under the Pennsylvania Charter School Law, with a principal place of business at 2227 Island Avenue, Philadelphia, PA 19142.

9.      PMCS currently operates a public charter school in Philadelphia County pursuant to a charter issued by Defendant Philadelphia SD—at the direction of the CAB—under the Charter School Law, 24 P.S. § 17-1701-A, *et seq.*

10.      Plaintiff Christopher Smith is the President of the Board of Trustees for PMCS, and serves as President of the Board of Trustees of PMCS. At all times relevant, Plaintiff Smith participated directly in communications with the District Defendants concerning PMCS' proposed charter renewal and asserts claims in his individual capacity arising from the District Defendants' alleged retaliation against him.

11.    Plaintiff S.N. is a minor residing in Philadelphia County who is currently enrolled at PMCS and brings this action by and through their parent and natural guardian, Donnaye Noland.

12.    Plaintiff L.R. is a minor residing in Philadelphia County who is currently enrolled at PMCS and brings this action by and through their parent and natural guardian, Maria C. Rios.

13.    Defendant Philadelphia SD is a school district of the first class organized and existing under the Philadelphia City Home Rule Charter and the Pennsylvania Public School Code of 1949, 24 P.S. § 1-101 *et seq.*, with its principal offices located at 440 N. Broad Street, Philadelphia, PA 19130.

14.    Defendant Philadelphia SD, through its Charter Schools Office ("CSO"), administers the day-to-day review, evaluation, and proposed renewal of charter schools operating within its geographic boundaries.

15.    Defendant BOE is the nine-member governing body of The School District of Philadelphia. The BOE is the appointed body responsible for convening public meetings where formal actions are taken regarding The School District of Philadelphia, including authorizing and renewing public charter schools operating therein.

16.    Although separately named, The School District of Philadelphia and its Board of Education are the same legal entity for purposes of this action and are collectively referred to herein as the "School District."

6

17.     Defendant Peng Chao is the Chief of CSO at the Philadelphia SD. At all relevant times, Defendant Chao exercised supervisory and policymaking authority over the charter renewal process applicable to PMCS. Defendant Chao is named in his personal and official capacity.

18.     At all times material hereto, the District Defendants acted under color of the statutes, ordinances, regulations, customs, policies, and usages of the Commonwealth of Pennsylvania and the School District. Their acts and omissions were undertaken within the scope of their respective authority and caused the deprivation of rights secured by the Constitution and laws of the United States.

19.     At all times material hereto, the School District, acting through its BOE, CSO, and final policymakers, maintained and implemented the policies, customs, and practices challenged in this action. The constitutional and statutory violations alleged herein were committed pursuant to official municipal policy, longstanding custom, or decisions of officials possessing final policymaking authority.

## JURISDICTION AND VENUE

20.     Because this action alleges multiple violations of the United States Constitution and the laws of the United States, it raises several federal questions, thereby conferring subject matter jurisdiction on this Court under 28 U.S.C. § 1331.

21.     This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a), because the claim arises out of the same operative facts as Plaintiffs' federal claims and "form part of the same case or

controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

22.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to the present claims occurred in this District, namely Philadelphia County, Pennsylvania.

## FACTUAL ALLEGATIONS

### A. The School District's Charter Renewal Process.

23.      The School District, acting through its CSO and the Board of Education ("BOE"), administers the charter renewal process for public charter schools operating within the School District's jurisdiction pursuant to the CSL, 24 P.S. § 17-1701-A *et seq*.

24.     Under the CSL, charter schools are granted operating authority for fixed terms of up to five years, after which the School District must conduct a comprehensive review to determine whether the charter should be renewed, nonrenewed, or revoked pursuant to 24 P.S. § 17-1729-A of the CSL. The CSL requires that this comprehensive review be conducted in accordance with the statutory standards governing charter renewal and nonrenewal.

25.     The charter renewal process is the mechanism by which the School District determines whether a charter school may continue operating as a public school and receiving public funding. Accordingly, the renewal process directly affects not only the charter school itself, but also the hundreds of public-school

students and families who rely upon the continued availability of that educational program.

26.     In practice, the renewal process is initiated by the CSO, which conducts an internal review of each charter school's academic performance, financial condition, governance practices, and operational compliance before issuing a recommendation to the BOE regarding whether the charter should be renewed or nonrenewed.

27.     The CSO evaluates charter schools using internally developed performance frameworks, metrics, and methodologies that are not promulgated through formal rulemaking and that are subject to modification by the CSO over time (the "Performance Framework").

28.     The Performance Framework consists of three domains: academic success, organizational compliance and viability, and financial health and sustainability.

29.     The School District exercises substantial discretion in selecting comparator schools, assigning evaluation metrics, weighting performance measures, and interpreting the results generated by the Performance Framework. Neither the CSL nor any duly promulgated regulation prescribes the methodology employed by the School District in performing these functions.

30.     During the period relevant to this action, the School District recognized that the Performance Framework required substantial revision and

undertook a comprehensive review and redesign of that framework through its Project RiSE initiative.

31.    Nevertheless, despite acknowledging the need to revise its evaluation methodology, the School District continued to utilize the existing Performance Framework in evaluating PMCS and recommending that its charter not be renewed

**B. PMCS.**

32.    PMCS operates as a public charter school pursuant to a written charter agreement between PMCS and the Philadelphia SD. A copy of PMCS' current charter agreement is attached hereto as Exhibit A.

33.    Under the CSL, the School District is required to annually assess PMCS' performance and perform a comprehensive review prior to granting or denying renewal of its charter.

34.    PMCS is the City of Philadelphia's only public Montessori charter school and serves a materially smaller student population than the comparator schools utilized by the School District during the renewal process, with approximately 250 enrolled students.

35.    PMCS' Montessori educational model emphasizes individualized instruction, multi-age classrooms, student-directed learning, and specialized instructional methods that distinguish it from traditional public schools operated by the School District.

36.    PMCS serves a predominantly Black or African American student population, a substantial percentage of whom are economically disadvantaged, and

approximately twenty percent (20%) of its students receive special education services or accommodations.

37.    PMCS provides Montessori instruction specifically adapted for children with autism, ADHD, emotional disturbance, or other disabilities.

38.    The Student Plaintiffs have enrolled and remained at PMCS because traditional district placements were unsuccessful, and students with disabilities, including Plaintiff L.R., elected PMCS because of its specialized disability supports.

39.    Closure of PMCS would require many disabled students, including Plaintiff L.R., to lose established IEP teams, therapists, aides, behavioral supports, and classroom environments.

40.    The Student Plaintiffs attend PMCS because of its unique educational environment and would be directly affected by the nonrenewal of PMCS' charter.

41.    As set forth more fully below, Plaintiffs allege that the School District's Performance Framework methodology disproportionately disadvantages charter schools serving predominantly Black or African American student populations by relying upon metrics and comparator methodologies that produce racially disparate outcomes.

42.    Unlike students attending traditional School District-operated public schools, students attending public charter schools are subject to the consequences of the School District's Performance Framework because that Framework is used to determine whether their schools may continue operating.

11

43. The School District's continued application of the Performance Framework has resulted in the disproportionate nonrenewal or revocation of charter schools serving higher-than-average percentages of racial minority students.

44. In PMCS' case, the School District's application of the Performance Framework has resulted in burdensome renewal conditions, an adverse renewal recommendation, and the imminent threat that PMCS will cease operating, thereby displacing its enrolled students and disrupting their educational continuity, specialized programming, and established educational environment.

## C. Unequal Assessment Between Charter School Students and Philadelphia SD Students.

45. As public school students, charter school students and students enrolled in School District-operated public schools each receive a publicly funded education pursuant to Pennsylvania law and are subject to the Commonwealth's statewide academic assessment requirements.

46. Student Plaintiffs are similarly situated to students who attend School District-operated public schools for purposes of measuring academic achievement and educational outcomes.

47. Although they are similarly situated, the academic success of charter school students and Philadelphia SD students is evaluated using different methodologies and performance measures.

48. For students who attend School District-operated public schools, academic success is measured primarily through student academic proficiency,

which is evaluated using, *inter alia*, the Pennsylvania System of School Assessment ("PSSA"), a standardized test administered annually to public school students, including charter school students.

49.    Comparatively, the academic performance of students attending public charter schools, including the Student Plaintiffs is evaluated under the School District's Performance Framework using additional performance measures, including student growth and attendance, which are incorporated into the Academic Success domain. *See* 5/11/26 ACE-R at 10-11, attached hereto as Exhibit B.

50.    Indeed, the academic success of students attending School District-operated public schools is not evaluated under the same Performance Framework or by reference to the same combination of proficiency, growth, and attendance metrics that the School District applies to charter schools when determining whether those schools may continue operating.

51.    Upon information and belief, the School District intentionally adopted and continues to employ separate evaluation methodologies for charter schools that subject charter school students and the schools they attend to materially different standards than those applied to students attending School District-operated public schools.

52.    As a result, students enrolled in charter schools are uniquely exposed to the risk that their schools will be recommended for nonrenewal based upon evaluation criteria that are not applied to similarly situated students attending School District-operated public schools.

53.    Neither the CSL nor any duly promulgated regulation requires the School District to evaluate charter schools using the particular combination of proficiency, growth, attendance, comparator-school analyses, and weighting methodology employed through the Performance Framework.

54.    The School District possesses substantial discretion in selecting comparator schools, assigning weights to evaluation criteria, and determining whether a charter school has satisfied the Academic Success domain. That discretion materially affects whether a charter school will receive a recommendation for renewal or nonrenewal.

55.    As applied to PMCS, the School District's evaluation methodology resulted in an adverse recommendation that threatens to deprive the Student Plaintiffs of continued access to PMCS' educational program notwithstanding the absence of comparable evaluation standards for students attending School District-operated public schools.

## D. Racial Discrimination

56.    The School District's Performance Framework has been applied in a manner that has disproportionately affected charter schools serving predominantly Black or African American and other racial minority student populations.

57.    The student body at PMCS is overwhelmingly comprised of Black or African American students, representing nearly 90% of total enrollment, while no students enrolled at PMCS identified as White. *See* Ex. B at 6.

58.    Approximately 86% of PMCS' students qualify for free or reduced-price lunch or otherwise meet criteria associated with economic disadvantages. *See id.*

59.    Approximately 20% of students enrolled at PMCS have been identified as special education students or students with disabilities during the reported school year. *See id.*

60.    In comparison, according to the Philadelphia SD's 2025-26 ACE-R of PMCS, during the 2025-26 school year, approximately 52% of the overall student population of the Philadelphia SD consisted of African American or Black students, while 12% of the student population consisted of White students. *See id.*

61.    Upon information and belief, the foregoing racial demographics of PMCS and the Philadelphia SD have remained relatively consistent since PMCS opened.

62.    Over the past several years, the School District has consistently and disproportionately nonrenewed and/or revoked the charters of charter schools which have served student populations with higher percentages of students from racial minorities than the overall student population of the Philadelphia SD, causing real and substantial harm to students.

63.    The Student Plaintiffs enrolled at PMCS because of its unique Montessori educational program and now face the imminent loss of that educational opportunity as a direct result of the School District's recommendation that PMCS' charter not be renewed.

64.   The closure of these targeted schools, which has disproportionately harmed students from racial minorities, has been predicated upon the application of the Performance Framework, which disproportionately targets charter schools that serve a disproportionately high percentage of minority students, including PMCS.

65.   The Performance Framework is heavily weighted by data and metrics for which Black or African American students materially underperform other student groups. The Performance Framework is thus biased against charter schools which educate high proportions of Black or African American students.

66.   Upon information and belief, the School District has long been aware of concerns regarding the consistency, transparency, reliability, and equity of the Performance Framework, including concerns that its application produced disparate outcomes among charter schools serving different student populations and that it is materially skewed against charter schools which serve disproportionately high percentages of Black or African American students.

67.   In August 2023, the School District received the results of an independent investigation into its charter school authorization and renewal practices conducted by Ballard Spahr LLP, a law firm the School District itself had retained to examine those practices (the "Ballard Spahr Report"). *See* Exhibit C.

68.   The Ballard Spahr Report concluded that the School District's charter renewal process suffered from a lack of transparency, an inconsistent application of comparator-school methodologies, and an uneven application of evaluation metrics among charter schools.

69.    The Ballard Spahr Report recommended that the Board of Education increase transparency in the charter renewal process and that the CSO revise its evaluation framework to increase accessibility and more appropriately account for equity considerations.

70.    Notwithstanding its receipt of the Ballard Spahr Report and the systemic deficiencies identified therein, the School District continued to evaluate PMCS under the same or substantially similar Performance Framework that was the subject of the Report's findings and recommendations.

71.    Beginning in October 2024, and continuing throughout the period in which PMCS was evaluated for charter renewal, the School District, through its CSO, undertook a multi-phase initiative known as "Project RiSE" to comprehensively review, redesign, and revise the Performance Framework. *See* Project RiSE Newsletters, Vols. 1-5, attached hereto as Exhibits D–H, respectively.

72.    In connection with Project RiSE, the School District engaged outside consultants, including Venn Education, The Ed.ucateD Approach, and the National Charter Schools Institute, to assist in redesigning the Performance Framework.

73.    During his May 14, 2026 presentation to the BOE recommending PMCS' nonrenewal, Defendant Chao publicly acknowledged that the Performance Framework presently establishes no required or expected proficiency percentage for the Academic Success domain, and that the School District is continuing to research and develop appropriate academic benchmarks as part of Project RiSE.

17

74.    Upon information and belief, the School District undertook Project RiSE, at least in part, in response to public criticism and internal concerns that the Performance Framework produced inconsistent and disparate outcomes for charter schools serving higher proportions of racial minority students.

75.    Despite this actual knowledge that the Performance Framework was unreliable, inconsistently applied, and productive of disparate outcomes correlated with the racial composition of the charter schools evaluated under it, the School District continued to apply the Performance Framework to PMCS and relied upon it as a basis for recommending PMCS' nonrenewal.

76.    The School District's continued use of the Performance Framework to evaluate PMCS, notwithstanding its actual knowledge—through the Ballard Spahr Report, Project RiSE, and Defendant Chao's own public admissions—that the Framework was unreliable and productive of racially disparate outcomes, constitutes deliberate indifference to the discriminatory effect of the Framework on PMCS' students.

77.    Indeed, despite possessing actual knowledge that the Performance Framework required significant revision and that concerns had been raised regarding its transparency, consistency, and equitable application, the School District continued to utilize that Framework in evaluating PMCS and recommending that its charter not be renewed. Those actions establish that the School District knowingly maintained and applied an evaluation methodology that they understood to produce arbitrary and disparate results.

18

### E. PMCS' Students with Disabilities.

78.    Approximately 20% of PMCS' approximately 250 enrolled students are identified as students with disabilities and receive specialized instruction, related services, and/or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act, and/or Title II of the Americans with Disabilities Act. *See* Ex. B at 6.

79.    PMCS is the only public charter school in Philadelphia offering a Montessori educational model, which provides individualized pacing, multi-age classroom groupings, and specialized instructional methods from which PMCS' students with disabilities currently benefit.

80.    PMCS also provides specialized instructional supports, related services, behavioral interventions, accommodations, and collaborative educational programming designed to meet the needs of students with disabilities. The services and programs available at PMCS are unavailable, or unavailable in a reasonably comparable form, at other Philadelphia public schools, particularly given PMCS' unique Montessori-based educational model.

81.    Nonrenewal of PMCS' charter would immediately terminate PMCS' operations, displacing all currently enrolled students with disabilities from their current placements, related-service providers, and individualized programming, without any assurance of continuity of comparable services at a receiving school.

82.    Indeed, students with disabilities enrolled at PMCS will be required to leave the school and transition to other educational settings. Such a transition

would disrupt existing educational relationships, continuity of services, established instructional supports, and the educational environment upon which those students presently rely, without any determination that reasonably comparable programs or services would be immediately available.

83.     In evaluating PMCS for renewal, the School District did not meaningfully consider the unique characteristics of PMCS' student population— including its substantial population of students with disabilities—or the potential impact that nonrenewal would have on those students when selecting comparator schools, applying evaluation criteria, or formulating its renewal recommendation.

84.     The School District did not conduct any assessment of the impact that nonrenewal of PMCS' charter would have upon students with disabilities currently enrolled at PMCS before recommending that PMCS' charter not be renewed.

85.     The School District did not evaluate whether reasonably comparable educational programs, instructional methodologies, related services, or disability supports would be available to PMCS' students with disabilities if PMCS ceased operations.

86.     The students with disabilities, including Plaintiff L.R., have enrolled at PMCS because they have successfully accessed educational services, accommodations, and supports in PMCS' educational environment and face disruption of those services if PMCS is forced to close.

87.     The harm to PMCS' students with disabilities described herein concerns their ability to access, on a systemic and school-wide basis, the specialized

20

Montessori-based educational program, accommodations, established educational supports, and related services currently provided at PMCS.

88.     Plaintiffs do not challenge the adequacy of any individual student's individualized education program ("IEP") or seek relief requiring the Court to resolve educational placement determinations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482.

### F. School District Offers PMCS One-Year Charter Renewal with Conditions.

89.     The parties have engaged in ongoing disputes concerning the terms under which PMCS' charter would be renewed, including proposed conditions and amendments to the charter agreement that PMCS declined to accept as part of the School District's prior renewal proposal. Following expiration of PMCS' charter in 2024, the School District proposed a one-year renewal agreement with fourteen (14) conditions for PMCS. *See* PMCS Proposed 2024 Charter, attached hereto as Exhibit I.

90.     The proposed conditions sought to address academic, organizational, and operational performance, including universal screening, tiered instruction, progress monitoring, English Learner identification, staff hiring and clearances, financial reporting, Board governance, and implementation of the Montessori mission. *See id.*

91.     While the proposed conditions included certain instructional supports—such as tiered instruction and progress monitoring—they did not include any requirements directly tied to the Academic Success domain metrics ultimately

21

used in the School District's ACE evaluation framework, including student proficiency, academic growth, or attendance.

92.    PMCS, after consultation with legal counsel, refused to sign the proposed one-year charter renewal agreement because the School District included unreasonable terms, including provisions that would allow the School District to unilaterally change evaluation criteria mid-term.

93.    PMCS attempted to negotiate these terms in good faith, but the School District refused to modify the agreement.

94.    Despite refusing to sign the one-year charter renewal agreement in 2024, PMCS has substantially complied with all fourteen (14) conditions previously identified by the School District, including requirements related to:

- Universal Screening & Progress Monitoring
- Tiered Instruction & Interventions
- English Learner Identification
- Enrollment & Lottery Compliance
- Employee Handbooks & Clearances
- Statements of Financial Interest
- Board Governance & Training: Compliant
- Financial Reporting & Audits
- Montessori Mission Implementation

5/11/26 ACE-R, attached hereto as Exhibit B.

95.    As retaliation for refusing to sign the School District's proposed one-year renewal agreement with fourteen (14) conditions, PMCS was compelled to undergo a new, formal renewal evaluation during the 2025-2026 school year and ultimately relied upon that process to recommend nonrenewal of PMCS' charter.

**G.  Retaliation Against PMCS Board President Christopher Smith.**

96.    Plaintiff Christopher Smith is the President of the Board of Trustees of PMCS and, in that capacity, was directly involved in PMCS' communications with the CSO regarding the proposed 2024 one-year conditional renewal agreement and PMCS' decision not to execute that agreement.

97.    In his individual capacity as Board President, Plaintiff Smith personally communicated PMCS' opposition to certain terms of the proposed 2024 renewal agreement to representatives of the CSO, including provisions that would have permitted the School District to unilaterally alter evaluation criteria mid-term.

98.    Following PMCS' refusal to execute the School District's proposed 2024 one-year conditional renewal agreement, Defendant Chao, either personally or through representatives of the CSO, repeatedly raised the unsigned agreement during meetings and renewal-related communications with PMCS leadership, specifically Plaintiff Smith.

99.    On multiple occasions, Defendant Chao, or CSO representatives acting at his direction, asked PMCS leadership, including Plaintiff Smith, when PMCS intended to sign the proposed renewal agreement and referenced the renewal outcomes of other charter schools that had proceeded through renewal without executed agreements.

100.    Defendant Chao, personally and through CSO representatives, communicated these statements in a manner that PMCS reasonably understood as

cautioning the school about potential adverse renewal consequences associated with maintaining its refusal to execute the proposed agreement.

101. Plaintiff Smith reasonably understood Defendant Chao's statements as personal threats directed at him, intended to coerce him, in his capacity as Board President, into abandoning PMCS' opposition to the proposed renewal terms and to deter him from continuing to advocate against those terms.

102. Defendant Chao's statements and communications were reasonably understood by Plaintiff Smith as conveying that PMCS' continued refusal to execute the proposed agreement would adversely affect the School District's treatment of PMCS during the renewal process.

103. Defendant Chao's statements, personally and through CSO representatives, were made with knowledge of, and in direct response to, Plaintiff Smith's personal role in communicating and maintaining PMCS' refusal to sign the proposed agreement.

104. Plaintiff Smith understood these statements as attempts to pressure him, in his role as Board President, to abandon PMCS' position regarding the proposed renewal agreement.

105. The retaliatory communications occurred repeatedly over the course of the renewal process. For example, on March 3, 2025, Plaintiff Smith attended a meeting with two other PMCS representatives and CSO representatives Mariel Ziegler and Ebony McCormick. During that meeting, Ziegler specifically advised PMCS representatives to review recordings of prior Board of Education charter

24

renewal proceedings involving charter schools that had not executed renewal agreements and the outcomes of those proceedings.

106.   Similar discussions occurred during subsequent meetings between PMCS leadership and CSO representatives. On August 26, 2025, Plaintiff Smith attended a meeting with two other PMCS representatives and CSO representatives Evangeline Berube, Eric Soble, Rebecca Dunn, and Nellie Kollar. During that meeting, CSO representatives again raised PMCS' failure to execute the renewal agreement and questioned whether and when PMCS intended to do so.

107.   Plaintiff Smith also attended a November 5, 2025 meeting with two other PMCS representatives and CSO representatives Rebecca Dunn and Defendant Chao. During that meeting, representatives of the CSO again raised PMCS' refusal to sign the renewal agreement and continued to draw attention to that refusal in connection with the ongoing renewal process.

108.   In addition, PMCS representatives attended meetings with CSO representatives on April 4, 2025 and April 7, 2026 during which CSO personnel referenced charter schools that had proceeded through renewal without signed agreements and continued to question why PMCS had not executed the proposed renewal agreement. These communications reflected an ongoing pattern of pressure directed at PMCS concerning its refusal to sign.

109.   Collectively, these repeated statements and inquiries communicated to Plaintiff Smith that PMCS' refusal to execute the proposed agreement would negatively impact the School District's treatment of PMCS during the renewal

25

process. Because Plaintiff Smith was the principal Board representative responsible for communicating and maintaining PMCS' opposition to the proposed agreement, he reasonably understood the statements as directed at him personally and as an effort to pressure him to abandon his advocacy on PMCS' behalf.

110.   Following Defendant Chao's statements, the School District proceeded to recommend and pursue nonrenewal of PMCS' charter, consistent with the outcome Defendant Chao warned Plaintiff Smith would befall charter schools that did not sign.

111.   The School District's nonrenewal recommendation was motivated, at least in part, by PMCS' refusal to execute the proposed renewal agreement and by Plaintiff Smith's advocacy on PMCS' behalf.

112.   As a result of the School District's conduct, Plaintiff Smith suffered personal injuries separate and apart from those allegedly suffered by PMCS, including loss of professional reputation, interference with his ability to perform his duties as Board President, emotional distress, and the chilling of his protected advocacy. These injuries were proximately caused by the School District's retaliatory conduct.

**COUNT I**
**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.**
**(S.N., a Minor, by Donnaye Noland, Guardian v. District Defendants)**

113.   Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

114.    Defendant Philadelphia SD and its BOE are recipients of federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

115.    PMCS' student body is overwhelmingly comprised of Black or African American students, and the Performance Framework applied by the School District to evaluate PMCS for renewal has a demonstrated disparate effect on charter schools serving disproportionately high percentages of racial minority students, as set forth above.

116.    Plaintiff S.N. is a Black or African American student enrolled at PMCS and is an intended beneficiary of educational programs and activities receiving federal financial assistance.

117.    As alleged above, PMCS serves an overwhelmingly Black or African American and economically disadvantaged student population.

118.    The School District knew that the Performance Framework and renewal methodology it employed disproportionately and adversely affected charter schools serving predominantly Black or African American student populations.

119.    Before recommending nonrenewal of PMCS' charter, the School District had actual knowledge, through the Ballard Spahr Report, Project RiSE, and Defendant Chao's own public statements, that the Performance Framework was inconsistent, unreliable, inequitable, and productive of racially disparate outcomes, and continued to apply the Framework to PMCS notwithstanding that knowledge.

120.    Despite that knowledge, the School District deliberately elected to continue to use and employ the same or substantially similar evaluation methodology in reviewing PMCS and recommending that its charter not be renewed, and rejected or declined to implement available alternatives designed to eliminate or reduce the methodology's known discriminatory effects.

121.    The School District intentionally maintained and applied that methodology despite knowing that it disproportionately affected charter schools serving predominantly Black or African American student populations and despite available alternatives under consideration through Project RiSE.

122.    The District Defendants' decision to continue applying the challenged methodology was not inadvertent, negligent, or accidental. Rather, the District Defendants intentionally adhered to and enforced a renewal process they knew would disproportionately burden predominantly Black or African American charter school communities, including PMCS, while continuing to exercise discretion over the design, application, weighting, and implementation of that methodology.

123.    The School District intentionally treated PMCS and its students differently from similarly situated public schools by applying arbitrary, shifting, and inconsistently applied evaluation criteria that were not applied in an even-handed manner to similarly situated public schools and applied the challenged evaluation methodology in a manner that deprived the students, including Plaintiff S.N., the full and equal benefits of a publicly funded educational program without regard to the foreseeable discriminatory consequences of those actions.

28

124. The School District's continued application of the Performance Framework to PMCS, despite its actual knowledge of the Framework's racially disparate effect on charter schools serving predominantly Black and African American student populations, constitutes intentional discrimination and deliberate indifference on the basis of race in violation of Title VI.

125. The recommendation to deny renewal of PMCS' charter, and the resulting threat of closure, directly and foreseeably deprives Plaintiff S.N. of the benefits of a federally funded educational program because of their race.

126. As a direct and proximate result of the District Defendants' conduct, Plaintiff S.N. has suffered and will continue to suffer irreparable injury, including (1) uncertainty regarding their continued enrollment at PMCS; (2) the imminent loss of access to PMCS' Montessori educational program; (3) disruption of established educational relationships, instructional continuity, and extracurricular opportunities; (4) emotional distress and anxiety associated with the threatened closure of their school; and (5) for those students with disabilities, including Plaintiff L.R., the threatened disruption of established accommodations, related services, and educational supports.

127. The District Defendants' conduct has caused, and unless enjoined will continue to cause Plaintiff S.N. to be subjected to discrimination on the basis of race in violation of Title VI.

128. Unless enjoined, the District Defendants will continue to discriminate against Plaintiff S.N. on the basis of race in violation of Title VI.

29

WHEREFORE, the Plaintiff S.N. respectfully requests that this Court enter judgment in their favor and against the District Defendants and:

   a. Declare that the District Defendants' conduct violates Title VI of the Civil Rights Act of 1964;

   b. Preliminarily and permanently enjoin the District Defendants from relying upon the challenged renewal recommendation and Performance Framework to deny renewal of PMCS' charter unless and until the District Defendants implement a renewal process that complies with federal law;

   c. Award the Plaintiff S.N. compensatory damages according to proof;

   d. Award the Plaintiff S.N. their reasonable attorneys' fees and costs pursuant to applicable law; and

   e. Grant such other and further relief as the Court deems just and proper.

## COUNT II
### 42 U.S.C. § 1983 – First Amendment Retaliation
### (Plaintiff Smith v. Defendant Chao)

129.   Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

130.   Throughout the renewal process, Plaintiff Smith spoke and advocated on matters of public concern, including the integrity of the School District's charter renewal process, the legality of proposed charter conditions, the School District's authority to unilaterally modify renewal criteria, and the continued availability of a public Montessori educational program for PMCS' students. This advocacy constituted speech protected by the First Amendment.

131.   Moreover, Plaintiff Smith's opposition to, and refusal to accede to, certain terms of the School District's proposed 2024 renewal agreement,

30

communicated by Smith in his individual capacity as Board President, constitutes speech and expressive conduct on a matter of public concern protected by the First Amendment.

132. Defendant Chao was personally aware of Plaintiff Smith's protected speech and advocacy.

133. After Plaintiff Smith engaged in the foregoing protected activity, Defendant Chao, personally and/or through employees acting at his direction, repeatedly referenced PMCS' refusal to execute the proposed renewal agreement, warned that schools declining to execute similar agreements had experienced adverse renewal outcomes, and otherwise sought to pressure Plaintiff Smith to abandon his opposition to the proposed renewal terms.

134. Defendant Chao thereafter participated in and approved the continued application of the challenged renewal methodology to PMCS and the recommendation that PMCS' charter not be renewed.

135. The temporal proximity between Plaintiff Smith's protected activity and Defendant Chao's conduct, Defendant Chao's repeated references to Plaintiff Smith's opposition to the proposed renewal agreement, Defendant Chao's threats concerning the consequences of refusing the agreement, and the sequence of events described above plausibly demonstrate that Plaintiff Smith's protected speech was a substantial and motivating factor in Defendant Chao's retaliatory conduct.

136. Defendant Chao's conduct and statements, through CSO representatives, and subsequent conduct were causally connected to, and motivated

31

by, Plaintiff Smith's protected activity in opposing the proposed renewal agreement and his advocacy concerning the legality of the School District's renewal practices.

137.   Defendant Chao's conduct and statements would not have occurred but for Plaintiff Smith's exercise of his protected speech and advocacy rights.

138.   At all relevant times, Defendant Chao acted intentionally, knowingly, maliciously, and under color of state law.

139.   As a direct and proximate result of Defendant Chao's retaliatory conduct, Plaintiff Smith suffered injuries separate and distinct from those allegedly sustained by PMCS, including: (1) interference with his ability to carry out his responsibilities as President of PMCS' Board of Trustees; (2) the chilling of his willingness to continue advocating against the School District's proposed renewal conditions; (3) damage to his professional reputation and standing; (4) emotional distress, anxiety, embarrassment, and humiliation; and (5) the deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

140.   Defendant Chao's conduct and statements would deter a person of ordinary firmness from continuing to engage in protected advocacy concerning the School District's charter renewal process.

141.   Defendant Chao's conduct violated Plaintiff Smith's rights under the First Amendment and is actionable pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Smith respectfully requests that this Court enter judgment in his favor and against Defendant Chao, in his individual capacity, and:

32

a.  Declare that Defendant Chao violated Plaintiff Smith's rights under the First Amendment;

b.  Award compensatory damages;

c.  Award punitive damages;

d.  Award the cost of prosecuting this action together with reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

e.  Award any additional relief that the Court deems appropriate.

## COUNT III
### 42 U.S.C. § 1983 – Equal Protection Violation
**(Student Plaintiffs v. District Defendants)**

142.  Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

143.  The Student Plaintiffs are enrolled in a Pennsylvania public school and are entitled to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV, § 1.

144.  The District Defendants deprived the Student Plaintiffs of equal protection of the laws under the United States Constitution by intentionally subjecting the public school they attend to evaluation standards and renewal criteria that are materially different from those applied to students attending School District-operated public schools, thereby placing only charter school students at risk of losing access to their existing public educational program based upon those additional criteria.

145.  Specifically, the District Defendants treated the Student Plaintiffs differently by evaluating PMCS through the Performance Framework, including

33

Academic Success measures based upon proficiency, student growth, attendance, comparator-school analyses, and other internally developed metrics that are not used in determining whether students attending School District-operated public schools may continue attending their schools.

146. The District Defendants intentionally adopted, implemented, and maintained the Performance Framework and intentionally applied that Framework to PMCS while choosing not to apply comparable evaluation criteria to School District-operated public schools.

147. The District Defendants also intentionally adopted, implemented, interpreted, and applied the challenged Performance Framework to PMCS using discretionary criteria, comparator-school selections, weighting methodologies, and evaluation standards that were arbitrary, inconsistent, and materially different from those applied to similarly situated charter schools undergoing renewal review

148. The District Defendants exercised substantial discretion in selecting comparator schools, assigning performance metrics, weighting evaluation criteria, and determining whether PMCS satisfied the Academic Success domain of the Performance Framework.

149. Rather than applying objective and consistently administered standards, the District Defendants intentionally employed shifting methodologies, changing comparator groups, discretionary weighting, and internally developed performance measures that lacked uniform application and operated to disadvantage PMCS.

34

150. The District Defendants' exercise of that discretion was arbitrary, inconsistent, and materially different from the standards applied to School District-operated public schools.

151. The District Defendants also intentionally treated PMCS differently from similarly situated charter schools without any rational governmental justification for the disparate treatment.

152. The District Defendants acted under color of state law in adopting, implementing, and enforcing the challenged policies and practices.

153. Even if no suspect classification applies, the District Defendants intentionally subjected PMCS and its students to arbitrary and irrational governmental action that bears no rational relationship to any legitimate governmental objective.

154. The District Defendants have no rational basis for imposing the challenged Performance Framework in the manner alleged herein, including the use of internally developed evaluation criteria, comparator-school methodologies, and discretionary weighting mechanisms that are not required by the CSL and that directly determine whether students enrolled at PMCS may continue attending their chosen public school.

155. The District Defendants intentionally administered the renewal process in a discriminatory and arbitrary manner toward PMCS, a predominantly Black or African American charter school, while treating similarly situated public schools differently.

156. Together, the District Defendants' conduct deprived the Student Plaintiffs of their constitutional rights to equal protection of the laws.

157. As a direct and foreseeable consequence of the District Defendants' unequal treatment, the Student Plaintiffs face the imminent loss of access to PMCS, disruption of their educational continuity, separation from established teachers and classmates, interruption of extracurricular and educational opportunities, and other injuries not imposed upon similarly situated students attending School District-operated public schools.

158. As a direct and proximate result of the District Defendants' conduct, the Student Plaintiffs have suffered and will continue to suffer irreparable injury, including: (1) uncertainty regarding their continued enrollment; (2) disruption of established educational relationships: (3) emotional distress associated with the threatened closure of PMCS; and (4) the loss of educational opportunities unique to PMCS' Montessori educational program.

WHEREFORE, the Student Plaintiffs respectfully request that this Court enter judgment in their favor and against the District Defendants and:

   a. Declare that the District Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment;

   b. Preliminarily and permanently enjoin the District Defendants from relying upon the challenged evaluation methodology to deny renewal of PMCS' charter;

   c. Award compensatory damages to the Student Plaintiffs according to proof;

   d. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

e.  Grant such other and further relief as the Court deems just and proper.

## COUNT IV
## Violations of the Equal Protection and Education Clauses of the Pennsylvania Constitution
**(Student Plaintiffs v. District Defendants)**

159.  Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

160.  Article I, Section 26 provides that neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right or discriminate in the exercise of any civil right. Pa. Const. art. I, § 26.

161.  Article III, Section 14 of the Pennsylvania Constitution states that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14.

162.  As applied, the right to public education is a fundamental right under the Pennsylvania Constitution and any equal protection challenge thereto shall be examined under strict scrutiny. *See William Penn School District v. Pennsylvania Department of Education*, 294 A.3d 537, 959 (Pa. Cmwlth. 2023).

163.  Similar to an equal protection analysis under the Fourteenth Amendment of the United States Constitution, under the Pennsylvania Constitution, equal protection "demands that uniform treatment be given to similarly situated parties." *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1209-10 (Pa. 2020).

37

164.    The Student Plaintiffs are students enrolled in PMCS, a public charter school established pursuant to the CSL and constituting part of Pennsylvania's public education system.

165.    Neither the CSL nor the Pennsylvania Constitution permits the District Defendants to administer their authority through arbitrary, irrational, inconsistent, or discriminatorily applied methodologies that unnecessarily threaten students' continued access to a public education.

166.    The District Defendants exercised broad discretion in designing, modifying, weighting, and applying the challenged Performance Framework, including the selection of comparator schools, performance metrics, academic weighting, and other evaluation criteria.

167.    The District Defendants exercised that discretion arbitrarily and inconsistently by applying shifting methodologies, internally developed criteria, changing comparator groups, and discretionary weighting systems that lacked objective standards, transparency, and uniform application.

168.    Despite possessing actual knowledge that the challenged methodology was unreliable, inequitable, and under active reconsideration through Project RiSE, the District Defendants nevertheless continued to employ that methodology in recommending that PMCS' charter not be renewed.

169.    The District Defendants' arbitrary and irrational exercise of governmental authority threatens to deprive the Student Plaintiffs of continued access to their existing public educational program, disrupt their educational

38

continuity, and eliminate their opportunity to continue receiving PMCS' unique public Montessori education.

170. The District Defendants also deprived the Student Plaintiffs of equal protection of the laws and the equal educational opportunities guaranteed by the Pennsylvania Constitution by subjecting the public school they attend to materially different evaluation standards than those applied to students attending School District-operated public schools.

171. Specifically, the District Defendants employed the internally developed Performance Framework, including additional performance measures such as student growth, attendance, comparator-school analyses, and discretionary evaluation criteria, in determining whether PMCS could continue operating, while students attending School District-operated public schools were not subjected to comparable renewal standards.

172. The District Defendants intentionally adopted, implemented, and enforced the Performance Framework in the manner alleged herein despite possessing substantial discretion regarding the methodology employed in evaluating PMCS.

173. The District Defendants lacked an adequate constitutional justification for applying materially different and discretionary evaluation methodologies that uniquely jeopardize the continued educational opportunities of students attending PMCS.

174.    Together, the District Defendants' conduct deprived the Student Plaintiffs of their constitutional rights to equal protection of the laws under the Pennsylvania Constitution and equal educational opportunities guaranteed by the Pennsylvania Constitution.

175.    As a direct and proximate of the District Defendants' conduct and actions, the Student Plaintiffs have suffered and will continue to suffer irreparable injury, including: (1) the threatened loss of access to PMCS' public educational program; (2) disruption of educational continuity; (3) separation from established teachers and classmates; (4) interruption of educational opportunities; and (5) other injuries described above.

176.    The District Defendants acted intentionally and under color of Pennsylvania law in implementing the policies and practices challenged herein.

177.    The School District exercised discretionary renewal authority in an arbitrary manner that threatens to deprive hundreds of students of continued access to an established public educational program, notwithstanding the Pennsylvania Constitution's guarantee of a thorough and efficient system of public education.

178.    The challenged conduct therefore violates Article I, Section 26 by denying the Student Plaintiffs the equal enjoyment of rights secured under Pennsylvania law and violates Article III, Section 14 by arbitrarily impairing the Student Plaintiffs' constitutionally protected educational opportunities.

179. Unless enjoined, the District Defendants' conduct will continue to deprive the Student Plaintiffs of the protections afforded by the Pennsylvania Constitution.

WHEREFORE, the Student Plaintiffs respectfully request that this Court enter judgment in their favor and against the District Defendants and:

a. Declare that the District Defendants' conduct violates the Pennsylvania Constitution;

b. Preliminarily and permanently enjoin the District Defendants from implementing the challenged renewal recommendation and Performance Framework in the manner alleged herein;

c. Award the Student Plaintiffs compensatory damages to the extent available under Pennsylvania law;

d. Award such equitable relief as may be necessary to remedy the constitutional violations alleged herein; and

e. Grant such other and further relief as the Court deems just and proper.

**COUNT V**
**Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132**
**(L.R., a Minor, by Maria C. Rios, Guardian v. District Defendants)**

180. Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

181. Defendants Philadelphia SD and BOE are public entities within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

182. Plaintiff L.R. is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

41

183.    As alleged above, PMCS serves a substantial population of students with disabilities who receive specialized educational services, accommodations, and related supports while enrolled at PMCS. The District Defendants recommended that PMCS' charter not be renewed without meaningfully evaluating the impact that closure of PMCS would have upon those students or whether reasonably comparable educational services, accommodations, and supports would be available to them if PMCS ceased operations.

184.    The District Defendants knew that approximately twenty percent (20%) of PMCS' student population consisted of students with disabilities and nevertheless proceeded with the challenged renewal recommendation without undertaking any individualized or systemic assessment of the effect that nonrenewal would have upon those students.

185.    The District Defendants further knew that many of those students relied upon the continuity of specialized educational programming, established service providers, familiar instructional environments, and disability-related accommodations provided through PMCS.

186.    The District Defendants failed to consider the unique impact that nonrenewal would have upon students with disabilities or whether reasonable modifications to the renewal process were necessary to avoid unnecessarily burdening those students.

187.    The District Defendants likewise failed to evaluate whether reasonably comparable educational services and supports would be available upon closure of

PMCS or whether the challenged renewal methodology disproportionately burdened schools serving significant populations of students with disabilities.

188. Defendants nevertheless proceeded with the challenged renewal recommendation despite knowing that closure would foreseeably disrupt established disability-related services, accommodations, educational continuity, and specialized programming relied upon by the students with disabilities, including Plaintiff L.R.

189. The School District's evaluation and comparator-school methodology has the effect of denying PMCS' students with disabilities meaningful access to PMCS' specialized Montessori-based educational program and related services.

190. Nonrenewal of PMCS' charter would exclude PMCS' students with disabilities from participation in, and deny them the benefits of, PMCS' educational program, by reason of their disability.

191. By recommending that PMCS' charter not be renewed without considering the unique needs of PMCS' students with disabilities or the availability of reasonably comparable educational services, the District Defendants have subjected those students to a substantial risk of losing meaningful access to educational services and supports presently available to them because of their disabilities.

192. The District Defendants intentionally failed to consider reasonable modifications or alternative approaches that would avoid or minimize the adverse impact of nonrenewal upon students with disabilities.

43

193. The District Defendants acted with deliberate indifference to the federally protected rights of the students with disabilities, including Plaintiff L.R.

194. The harm alleged in this Count concerns the systemic effects of the District Defendants' challenged renewal process upon students with disabilities enrolled at PMCS, including the threatened disruption of established educational supports, accommodations, related services, and continuity of educational programming.

195. The District Defendants intentionally refused to consider reasonable modifications that would have avoided or minimized those disability-related harms.

196. By reason of their disability, Plaintiff L.R. faces a substantially greater risk of disruption of educational services, specialized supports, accommodations, and related programming than nondisabled students.

197. The District Defendants acted with deliberate indifference to the federally protected rights of the students with disabilities, including Plaintiff L.R.

198. Plaintiff L.R. does not challenge the adequacy of any individual student's IEP or seek relief requiring the Court to resolve any educational placement determination under the IDEA.

199. As a direct and proximate result of the District Defendants' conduct, Plaintiff L.R. has suffered and will continue to suffer irreparable injury, including: (1) uncertainty regarding their continued access to established educational supports; (2) threatened disruption of related services and accommodations presently available to them; (3) interruption of established educational

44

relationships and instructional continuity; and (4) emotional distress and anxiety associated with the threatened closure of PMCS.

WHEREFORE, the Plaintiff L.R. respectfully requests that this Court enter judgment in their favor and against the District Defendants and:

a. Declare that the District Defendants violated Title II of the Americans with Disabilities Act;

b. Preliminarily and permanently enjoin the District Defendants from implementing the challenged nonrenewal recommendation unless and until they comply with Title II;

c. Award compensatory damages to Plaintiff L.R. to the extent permitted by law;

d. Award attorneys' fees and costs pursuant to 42 U.S.C. § 12205; and

e. Grant such other relief as the Court deems just and proper.

**COUNT VI**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**
**(L.R., a Minor, by Maria C. Rios, Guardian v. District Defendants)**

200.   Plaintiffs incorporate by reference the foregoing paragraphs as if the same were set forth at length herein.

201.   Defendants Philadelphia SD and its BOE receive federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and/or administer programs and activities receiving such assistance.

202.   Plaintiff L.R. is a qualified individual with a disability within the meaning of 29 U.S.C. § 794(a).

45

203.    As alleged above, PMCS serves a substantial population of students with disabilities who presently receive educational services, accommodations, and related supports while enrolled at PMCS.

204.    The District Defendants recommended that PMCS' charter not be renewed without evaluating the effect that closure would have upon those students or whether reasonably comparable educational services and supports would be available to them elsewhere within the School District.

205.    The District Defendants knew that PMCS served a significant population of students with disabilities and nevertheless proceeded with the challenged renewal recommendation without conducting any meaningful assessment of the effect that nonrenewal would have upon those students.

206.    The District Defendants failed to evaluate the impact that nonrenewal would have upon students with disabilities or whether reasonable modifications to the renewal process were necessary to avoid unnecessarily burdening those students.

207.    The District Defendants likewise failed to determine whether reasonably comparable educational services, accommodations, and related supports would be available if PMCS ceased operations.

208.    The District Defendants nevertheless proceeded with the challenged renewal recommendation despite knowing that closure would foreseeably disrupt disability-related services, accommodations, educational continuity, and meaningful access to educational benefits for students with disabilities.

209. The School District's evaluation and comparator-school methodology, has the effect of denying PMCS' students with disabilities meaningful access to PMCS' specialized Montessori-based educational program and related services, solely by reason of their disability.

210. Nonrenewal of PMCS' charter would exclude PMCS' students with disabilities from participation in, and deny them the benefits of, PMCS' educational program, solely by reason of their disability.

211. The District Defendants' recommendation that PMCS' charter not be renewed threatens to disrupt the educational services, accommodations, and supports presently available to the students with disabilities, including Plaintiff L.R., and places those students at substantial risk of losing meaningful access to educational benefits provided through a federally funded public education program.

212. The School District's renewal methodology failed to account for disability-related educational outcomes and/or penalized PMCS based on performance metrics that disproportionately reflect the educational needs of students with disabilities.

213. The District Defendants failed to consider reasonable alternatives or modifications that would have avoided or mitigated the foreseeable adverse effects of nonrenewal upon students with disabilities.

214. By refusing to consider reasonable modifications or alternatives designed to avoid or minimize those disability-related harms, the District Defendants denied the students with disabilities, including Plaintiff L.R.,

47

meaningful access to federally funded educational programs and activities solely by reason of their disabilities.

215. The District Defendants acted intentionally and with deliberate indifference to the federally protected rights of Plaintiff L.R.

216. The harm alleged in this Count concerns the systemic effects of the District Defendants' challenged conduct upon students with disabilities enrolled at PMCS, including disruption of educational continuity, established accommodations, related services, and other educational supports.

217. Plaintiff L.R. does not challenge the adequacy of any individual student's IEP or seek relief requiring this Court to resolve any IDEA educational-placement dispute.

218. As a direct and proximate result of the District Defendants' conduct, Plaintiff L.R. has suffered and will continue to suffer irreparable injury, including: (1) uncertainty regarding continued access to established accommodations and supports; (2) threatened disruption of educational continuity; (3) interruption of established relationships with educators and service providers; and (4) emotional distress and anxiety associated with the threatened closure of PMCS.

WHEREFORE, the Plaintiff L.R. respectfully requests that this Court enter judgment in their favor and against the District Defendants and:

    a. Declare that the District Defendants violated Section 504 of the Rehabilitation Act;

    b. Preliminarily and permanently enjoin the District Defendants from implementing the challenged nonrenewal recommendation unless and until the District Defendants comply with Section 504;

c.  Award compensatory damages to Plaintiff L.R. according to proof;

d.  Award reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 794a; and

e.  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 21, 2026

/s/ Mark E. Seiberling
Mark E. Seiberling (No. 91256)
Samantha G. Zimmer (No. 325650)
Miranda L. Dang (No. 330908)
Jonathan P. Rava (No. 332615)
Patrick Feeney (No. 334125)
**KLEINBARD LLC**
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Email: mseiberling@kleinbard.com
szimmer@kleinbard.com
mdang@kleinbard.com
jrava@kleinbard.com
pfeeney@kleinbard.com

Jeffrey R. Stacey (No. 310097)
O'DONNELL STACEY LLC
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422
Email: jeff@odonnellstacey.com

*Attorneys for Plaintiffs*

49