**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **CHRISTOPHER SMITH, S.N., a Minor, by DONNAYE NOLAND, Guardian, and L.R., a Minor, by MARIA C. RIOS, Guardian,** | : | Civil Action No.: 2:26-cv-05082 |
|  | : | |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| **THE SCHOOL DISTRICT OF PHILADELPHIA, THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA, and PENG CHAO,** | : | |
| Defendants. | : | |

**TEMPORARY RESTRAINING ORDER**

**AND NOW**, this _____ day of _____, 2026, upon consideration

of the Emergency Motion of Plaintiffs, S.N., a minor, by and through their parent

and natural guardian Donnaye Noland, and L.R., a minor, by and through their

parent and natural guardian Maria C. Rios, for Temporary Restraining Order and

Preliminary Injunction to Preserve the Status Quo, and any response from

Defendants, the School District of Philadelphia and The Board of Education of the

School District of Philadelphia (the "BOE") (together, the "School District"), it is

hereby **ORDERED** and **DECREED** that the Emergency Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the School District is **HEREBY**

temporarily **ENJOINED** from considering, voting on, approving, or otherwise

taking any action with respect to Action Item 3 on the agenda for the BOE's July 23, 2026 Action Meeting, including any resolution or action authorizing or commencing charter nonrenewal proceedings against Philadelphia Montessori Charter School, pending further order of the Court.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall remain in full force and effect until further Order of Court.

**BY THE COURT:**

_____

, **J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **CHRISTOPHER SMITH, S.N., a Minor, by DONNAYE NOLAND, Guardian, and L.R., a Minor, by MARIA C. RIOS, Guardian,** | : : : : : : | Civil Action No. 2:26-cv-05082 |
| Plaintiffs, | : : | **JURY TRIAL DEMANDED** |
| **v.** | : : : | |
| **THE SCHOOL DISTRICT OF PHILADELPHIA, THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA, and PENG CHAO,** | : : : : : : : | |
| Defendants. | : : | |

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION TO
PRESERVE THE STATUS QUO**

Plaintiffs, S.N., a minor, by and through their parent and natural guardian

Donnaye Noland, and L.R., a minor, by and through their parent and natural

guardian Maria C. Rios (together, the "Student Plaintiffs"), by and through their

undersigned counsel, hereby moves this Honorable Court for entry of a Temporary

Restraining Order, and thereafter a Preliminary Injunction, enjoining Defendants,

The School District of Philadelphia and The Board of Education of the School

District of Philadelphia (together, the "School District") from considering, voting

upon, approving, or otherwise taking any action to issue a notice of nonrenewal to

Philadelphia Montessori Charter School ("PMCS") or to commence charter nonrenewal proceedings against PMCS, pending further Order of this Court.

The basis for this Emergency Motion is set forth in the accompanying Memorandum of Law in Support of Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Preserve the Status Quo. Such facts, grounds, authority, and arguments are incorporated by reference and are a part of this Emergency Motion.

For the reasons set forth therein, the Student Plaintiffs respectfully request that this Honorable Court grant this Emergency Motion and:

a. Enter an immediate Temporary Restraining Order preserving the status quo by enjoining the School District from considering, voting upon, approving, or otherwise taking any action to issue a notice of nonrenewal to PMCS or commence charter nonrenewal proceedings against PMCS;

b. Schedule a prompt hearing on Plaintiffs' request for a Preliminary Injunction;

c. Following that hearing, enter a Preliminary Injunction continuing such relief pending final resolution of this action; and

d. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: July 21, 2026

/s/ Mark E. Seiberling
Mark E. Seiberling (No. 91256)
Samantha G. Zimmer (No. 325650)
Miranda L. Dang (No. 330908)
Jonathan P. Rava (No. 332615)
Patrick Feeney (No. 334125)

2

**KLEINBARD LLC**
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Email: mseiberling@kleinbard.com
szimmer@kleinbard.com
mdang@kleinbard.com
jrava@kleinbard.com
pfeeney@kleinbard.com

Jeffrey R. Stacey (No. 310097)
O'DONNELL STACEY LLC
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422
Email: jeff@odonnellstacey.com

*Attorneys for Plaintiffs*

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **CHRISTOPHER SMITH, S.N., a Minor, by DONNAYE NOLAND, Guardian, and L.R., a Minor, by MARIA C. RIOS, Guardian,** | : : : : : | Civil Action No.: 2:26-cv-05082 |
|  | : | **JURY TRIAL DEMANDED** |
| Plaintiffs, | : : |  |
| **v.** | : : |  |
| **THE SCHOOL DISTRICT OF PHILADELPHIA, THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA, and PENG CHAO,** | : : : : : : |  |
| Defendants. | : : |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO**

Plaintiffs S.N., a minor, by and through their parent and natural guardian Donnaye Noland, and L.R., a minor, by and through their parent and natural guardian Maria C. Rios (together, "Student Plaintiffs"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of Plaintiffs' Emergency Motion for Temporary Restraining Order, and thereafter a Preliminary Injunction, against Defendants, The School District of Philadelphia ("Philadelphia SD"), and The Board of Education of the School District of Philadelphia ("BOE") (together, the "School District").

## I.    INTRODUCTION:

This civil rights action challenges the unconstitutional and unlawful administration of the charter school renewal process by the School District. Through the implementation of arbitrary, internally developed, and inconsistently applied evaluation methodology, the School District has recommended that the charter of Philadelphia Montessori Charter School ("PMCS") not be renewed, thereby placing hundreds of public-school students at imminent risk of losing access to the only public Montessori educational program in the City of Philadelphia and depriving them of important constitutional and statutory rights.

This case is not about educational policy or the wisdom of charter schools. It is about whether a public school district may employ an arbitrary, internally developed, and concededly flawed evaluation process to recommend the closure of a public charter school serving predominantly Black or African American students and a significant population of students with disabilities, notwithstanding its own acknowledgment that the process lacks transparency, consistency, and objective standards. The Student Plaintiffs allege that the United States Constitution, federal civil rights statutes, and the Pennsylvania Constitution answer that question in the negative.

PMCS currently serves approximately 250 students residing in Philadelphia. Nearly ninety percent (90%) of its students are Black or African American, approximately eighty-six percent (86%) are economically disadvantaged, and approximately twenty percent (20%) are students with disabilities who receive

specialized instruction, accommodations, and related services. For many of these students and their families, PMCS is not merely another public school—it is the educational community they deliberately selected because of its unique Montessori instructional model, individualized learning environment, small-school setting, and demonstrated ability to meet their educational needs. PMCS is the only public Montessori charter school in Philadelphia, offering an educational program unavailable elsewhere within the Philadelphia School District.

Rather than evaluating PMCS under objective, transparent, and consistently applied standards, the School District employed an internally developed "Performance Framework" that relies upon discretionary weighting systems, comparator-school methodologies, and evolving academic metrics that are not prescribed by law. The School District continued to utilize that methodology despite their own recognition that it lacked transparency, consistency, and clearly defined academic benchmarks; despite the findings and recommendations of an independent investigation conducted by Ballard Spahr LLP; despite the School District's ongoing efforts through "Project RiSE" to redesign and replace the very evaluation framework used to recommend PMCS' nonrenewal; and despite their knowledge that the challenged methodology produced arbitrary, inconsistent, and inequitable results.

The Student Plaintiffs allege that the School District's actions violate federal and state law because the School District knowingly intentionally implemented and maintained an arbitrary and inconsistently applied renewal methodology;

3

knowingly continued to employ evaluation criteria they acknowledged required substantial revision; intentionally ignored the foreseeable discriminatory consequences of that methodology upon PMCS and its predominantly Black or African American student population; failed to provide meaningful consideration of the unique impact that nonrenewal would have upon students with disabilities; and otherwise deprived the Student Plaintiffs of rights secured by the United States and Pennsylvania Constitutions and federal civil rights statutes.

Unless enjoined, the School District's actions will deprive the Student Plaintiffs of continued access to their existing public educational program, disrupt their educational continuity, separate them from established teachers, classmates, and support systems, interfere with disability-related services and accommodations provided to students with disabilities, and inflict irreparable educational and constitutional injuries that cannot be adequately remedied through monetary damages alone. The threatened loss of PMCS would also dismantle an educational community uniquely designed to serve the needs of its students and would irreversibly disrupt years of educational progress and established relationships.

Plaintiff S.N. brings this action pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Plaintiff L.R. brings this action pursuant to Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and the Student Plaintiffs bring this action pursuant to the United States Constitution and Pennsylvania Constitution, seeking declaratory and injunctive relief to prevent the

4

School District from implementing the challenged charter renewal recommendation and the unconstitutional and unlawful renewal process upon which it is based.

Because the School District is scheduled to vote on July 23, 2026, whether to issue a notice of nonrenewal to PMCS, thereby initiating the statutory charter nonrenewal process, the Student Plaintiffs require the immediate entry of a Temporary Restraining Order, followed by a Preliminary Injunction, enjoining the School District from considering, voting upon, approving, or otherwise taking any action to commence charter nonrenewal proceedings against PMCS pending further Order of this Court. Absent such relief, the status quo will be irreversibly altered before this Court has an opportunity to adjudicate the Student Plaintiffs' claims on the merits.

## II.    FACTUAL BACKGROUND:

### A. The School District's Charter Renewal Process.

The School District, acting through its Charter School Office ("CSO") and the BOE, administers the charter renewal process for public charter schools operating within the School District's jurisdiction pursuant to the Charter School Law ("CSL"), 24 P.S. § 17-1701-A *et seq.* Under the CSL, charter schools are granted operating authority for fixed terms of up to five years, after which the School District must conduct a comprehensive review to determine whether the charter should be renewed, nonrenewed, or revoked pursuant to 24 P.S. § 17-1729-A of the CSL. The CSL requires that this comprehensive review be conducted in accordance with the statutory standards governing charter renewal and nonrenewal.

The charter renewal process is the mechanism by which the School District determines whether a charter school may continue operating as a public school and receiving public funding. Accordingly, the renewal process directly affects not only the charter school itself, but also the hundreds of public-school students and families who rely upon the continued availability of that educational program.

In practice, the renewal process is initiated by the CSO, which conducts an internal review of each charter school's academic performance, financial condition, governance practices, and operational compliance before issuing a recommendation to the BOE regarding whether the charter should be renewed or nonrenewed.

The CSO evaluates charter schools using internally developed performance frameworks, metrics, and methodologies that are not promulgated through formal rulemaking and that are subject to modification by the CSO over time (the "Performance Framework"). The Performance Framework consists of three domains: academic success, organizational compliance and viability, and financial health and sustainability. The School District exercises substantial discretion in selecting comparator schools, assigning evaluation metrics, weighting performance measures, and interpreting the results generated by the Performance Framework. Neither the CSL nor any duly promulgated regulation prescribes the methodology employed by the School District in performing these functions.

During the period relevant to this action, the School District recognized that the Performance Framework required substantial revision and undertook a comprehensive review and redesign of that framework through its Project RiSE

6

initiative. Nevertheless, despite acknowledging the need to revise its evaluation methodology, the School District continued to utilize the existing Performance Framework in evaluating PMCS and recommending that its charter not be renewed

## B.  PMCS.

PMCS operates as a public charter school pursuant to a written charter agreement between PMCS and the Philadelphia SD. A copy of PMCS' current charter agreement is attached hereto as Exhibit A.

Under the CSL, the School District is required to annually assess PMCS' performance and perform a comprehensive review prior to granting or denying renewal of its charter. PMCS is the City of Philadelphia's only public Montessori charter school and serves a materially smaller student population than the comparator schools utilized by the School District during the renewal process, with approximately 250 enrolled students. PMCS' Montessori educational model emphasizes individualized instruction, multi-age classrooms, student-directed learning, and specialized instructional methods that distinguish it from traditional public schools operated by the School District.

PMCS serves a predominantly Black or African American student population, a substantial percentage of whom are economically disadvantaged, and approximately twenty percent (20%) of its students receive special education services or accommodations. PMCS provides Montessori instruction specifically adapted for children with autism, ADHD, emotional disturbance, or other disabilities.

Plaintiff L.R. has enrolled and remained at PMCS because traditional district placement was unsuccessful, and Plaintiff L.R.—who has been diagnosed with autism—elected PMCS because of its specialized disability support. Closure of PMCS would require many disabled students, including Plaintiff L.R., to lose established IEP teams, therapists, aides, behavioral supports, and classroom environments. Plaintiff L.R. attends PMCS because of its unique educational environment and would be directly affected by the nonrenewal of PMCS' charter.

As set forth more fully below, Plaintiff S.N., and African American student, alleges that the School District's Performance Framework methodology disproportionately disadvantages charter schools serving predominantly Black or African American student populations by relying upon metrics and comparator methodologies that produce racially disparate outcomes.

Unlike students attending traditional School District-operated public schools, students attending public charter schools are subject to the consequences of the School District's Performance Framework because that Framework is used to determine whether their schools may continue operating. The School District's continued application of the Performance Framework has resulted in the disproportionate nonrenewal or revocation of charter schools serving higher-than-average percentages of racial minority students.

In PMCS' case, the School District's application of the Performance Framework has resulted in burdensome renewal conditions, an adverse renewal recommendation, and the imminent threat that PMCS will cease operating, thereby

8

displacing its enrolled students and disrupting their educational continuity, specialized programming, and established educational environment.

### C. Unequal Assessment Between Charter School Students and Philadelphia SD Students.

As public-school students, charter school students and students enrolled in School District-operated public schools each receive a publicly funded education pursuant to Pennsylvania law and are subject to the Commonwealth's statewide academic assessment requirements. The Student Plaintiffs are similarly situated to students who attend School District-operated public schools for purposes of measuring academic achievement and educational outcomes. Although they are similarly situated, the academic success of charter school students and Philadelphia SD students is evaluated using different methodologies and performance measures.

For students who attend School District-operated public schools, academic success is measured primarily through student academic proficiency, which is evaluated using, *inter alia*, the Pennsylvania System of School Assessment ("PSSA"), a standardized test administered annually to public school students, including charter school students. Comparatively, the academic performance of students attending public charter schools, including the Student Plaintiffs is evaluated under the School District's Performance Framework using additional performance measures, including student growth and attendance, which are incorporated into the Academic Success domain *See* 5/11/26 ACE-R at 10-11, attached hereto as Exhibit B. Indeed, the academic success of students attending School District-operated public schools is not evaluated under the same

9

Performance Framework or by reference to the same combination of proficiency, growth, and attendance metrics that the School District applies to charter schools when determining whether those schools may continue operating.

Upon information and belief, the School District intentionally adopted and continues to employ separate evaluation methodologies for charter schools that subject charter school students and the schools they attend to materially different standards than those applied to students attending School District-operated public schools. As a result, students enrolled in charter schools are uniquely exposed to the risk that their schools will be recommended for nonrenewal based upon evaluation criteria that are not applied to similarly situated students attending School District-operated public schools.

Neither the CSL nor any duly promulgated regulation requires the School District to evaluate charter schools using the particular combination of proficiency, growth, attendance, comparator-school analyses, and weighting methodology employed through the Performance Framework. The School District possesses substantial discretion in selecting comparator schools, assigning weights to evaluation criteria, and determining whether a charter school has satisfied the Academic Success domain. That discretion materially affects whether a charter school will receive a recommendation for renewal or nonrenewal.

As applied to PMCS, the School District's evaluation methodology resulted in an adverse recommendation that threatens to deprive the Student Plaintiffs of continued access to PMCS' educational program notwithstanding the absence of

10

comparable evaluation standards for students attending School District-operated public schools.

### D. Racial Discrimination

The School District's Performance Framework has been applied in a manner that has disproportionately affected charter schools serving predominantly Black or African American and other racial minority student populations.

The student body at PMCS is overwhelmingly comprised of Black or African American students, representing nearly 90% of total enrollment, while no students enrolled at PMCS identified as White. *See* Ex. B at 6. Approximately 86% of PMCS' students qualify for free or reduced-price lunch or otherwise meet criteria associated with economic disadvantage. *See id.* Approximately 20% of students enrolled at PMCS have been identified as special education students or students with disabilities during the reported school year. *See id.*

In comparison, according to the Philadelphia SD's 2025-26 ACE-R of PMCS, during the 2025-26 school year, approximately 52% of the overall student population of the Philadelphia SD consisted of African American or Black students, while 12% of the student population consisted of White students. *See id.* Upon information and belief, the foregoing racial demographics of PMCS and the Philadelphia SD have remained relatively consistent since PMCS opened.

Over the past several years, the School District has consistently and disproportionately nonrenewed and/or revoked the charters of charter schools which have served student populations with higher percentages of students from racial

11

minorities than the overall student population of the Philadelphia SD, causing real and substantial harm to students.

Plaintiff S.N. enrolled at PMCS because of its unique Montessori educational program and now faces the imminent loss of that educational opportunity as a direct result of the School District's recommendation that PMCS' charter not be renewed. The closure of these targeted schools, which has disproportionately harmed students from racial minorities, has been predicated upon the application of the Performance Framework, which disproportionately targets charter schools that serve a disproportionately high percentage of minority students, including PMCS. The Performance Framework is heavily weighted by data and metrics for which Black or African American students materially underperform other student groups. The Performance Framework is thus biased against charter schools which educate high proportions of Black or African American students.

Upon information and belief, the School District has long been aware of concerns regarding the consistency, transparency, reliability, and equity of the Performance Framework, including concerns that its application produced disparate outcomes among charter schools serving different student populations and that it is materially skewed against charter schools which serve disproportionately high percentages of Black or African American students.

In August 2023, the School District received the results of an independent investigation into its charter school authorization and renewal practices conducted by Ballard Spahr LLP, a law firm the School District itself had retained to examine

12

those practices (the "Ballard Spahr Report"). *See* Exhibit C. The Ballard Spahr Report concluded that the School District's charter renewal process suffered from a lack of transparency, an inconsistent application of comparator-school methodologies, and an uneven application of evaluation metrics among charter schools. The Ballard Spahr Report recommended that the Board of Education increase transparency in the charter renewal process and that the CSO revise its evaluation framework to increase accessibility and more appropriately account for equity considerations.

Notwithstanding its receipt of the Ballard Spahr Report and the systemic deficiencies identified therein, the School District continued to evaluate PMCS under the same or substantially similar Performance Framework that was the subject of the Report's findings and recommendations.

Beginning in October 2024, and continuing throughout the period in which PMCS was evaluated for charter renewal, the School District, through its CSO, undertook a multi-phase initiative known as "Project RiSE" to comprehensively review, redesign, and revise the Performance Framework. *See* Exhibit D. In connection with Project RiSE, the School District engaged outside consultants, including Venn Education, The Ed.ucateD Approach, and the National Charter Schools Institute, to assist in redesigning the Performance Framework.

During his May 14, 2026 presentation to the BOE recommending PMCS' nonrenewal, Defendant Chao publicly acknowledged that the Performance Framework presently establishes no required or expected proficiency percentage for

13

the Academic Success domain, and that the School District is continuing to research and develop appropriate academic benchmarks as part of Project RiSE. Upon information and belief, the School District undertook Project RiSE, at least in part, in response to public criticism and internal concerns that the Performance Framework produced inconsistent and disparate outcomes for charter schools serving higher proportions of racial minority students.

Despite this actual knowledge that the Performance Framework was unreliable, inconsistently applied, and productive of disparate outcomes correlated with the racial composition of the charter schools evaluated under it, the School District continued to apply the Performance Framework to PMCS and relied upon it as a basis for recommending PMCS' nonrenewal.

The School District's continued use of the Performance Framework to evaluate PMCS, notwithstanding its actual knowledge—through the Ballard Spahr Report, Project RiSE, and Defendant Chao's own public admissions—that the Framework was unreliable and productive of racially disparate outcomes, constitutes deliberate indifference to the discriminatory effect of the Framework on PMCS' students. Indeed, despite possessing actual knowledge that the Performance Framework required significant revision and that concerns had been raised regarding its transparency, consistency, and equitable application, the School District continued to utilize that Framework in evaluating PMCS and recommending that its charter not be renewed. Those actions establish that the

14

School District knowingly maintained and applied an evaluation methodology that they understood to produce arbitrary and disparate results.

### E. PMCS' Students with Disabilities.

Approximately 20% of PMCS' approximately 250 enrolled students are identified as students with disabilities and receive specialized instruction, related services, and/or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act, and/or Title II of the Americans with Disabilities Act. *See* Ex. B at 6.

PMCS is the only public charter school in Philadelphia offering a Montessori educational model, which provides individualized pacing, multi-age classroom groupings, and specialized instructional methods from which PMCS' students with disabilities currently benefit. PMCS also provides specialized instructional supports, related services, behavioral interventions, accommodations, and collaborative educational programming designed to meet the needs of students with disabilities. The services and programs available at PMCS are unavailable, or unavailable in a reasonably comparable form, at other Philadelphia public schools, particularly given PMCS' unique Montessori-based educational model.

Nonrenewal of PMCS' charter would immediately terminate PMCS' operations, displacing all currently enrolled students with disabilities from their current placements, related-service providers, and individualized programming, without any assurance of continuity of comparable services at a receiving school. Indeed, students with disabilities enrolled at PMCS will be required to leave the

school and transition to other educational settings. Such a transition would disrupt existing educational relationships, continuity of services, established instructional supports, and the educational environment upon which those students presently rely, without any determination that reasonably comparable programs or services would be immediately available.

In evaluating PMCS for renewal, the School District did not meaningfully consider the unique characteristics of PMCS' student population—including its substantial population of students with disabilities—or the potential impact that nonrenewal would have on those students when selecting comparator schools, applying evaluation criteria, or formulating its renewal recommendation. The School District did not conduct any assessment of the impact that nonrenewal of PMCS' charter would have upon students with disabilities currently enrolled at PMCS before recommending that PMCS' charter not be renewed. The School District did not evaluate whether reasonably comparable educational programs, instructional methodologies, related services, or disability supports would be available to PMCS' students with disabilities if PMCS ceased operations.

Plaintiff L.R. has enrolled at PMCS because they have successfully accessed educational services, accommodations, and supports in PMCS' educational environment and face disruption of those services if PMCS is forced to close. The harm to PMCS' students with disabilities described herein concerns their ability to access, on a systemic and school-wide basis, the specialized Montessori-based

16

educational program, accommodations, established educational supports, and related services currently provided at PMCS.

Plaintiff L.R. does not challenge the adequacy of any individual student's individualized education program ("IEP") or seek relief requiring the Court to resolve educational placement determinations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482.

**F.  School District Offers PMCS One-Year Charter Renewal with Conditions.**

The parties have engaged in ongoing disputes concerning the terms under which PMCS' charter would be renewed, including proposed conditions and amendments to the charter agreement that PMCS declined to accept as part of the School District's prior renewal proposal. Following expiration of PMCS' charter in 2024, the School District proposed a one-year renewal agreement with fourteen (14) conditions for PMCS. *See* PMCS Proposed 2024 Charter, attached hereto as Exhibit E.

The proposed conditions sought to address academic, organizational, and operational performance, including universal screening, tiered instruction, progress monitoring, English Learner identification, staff hiring and clearances, financial reporting, Board governance, and implementation of the Montessori mission. *See id.* While the proposed conditions included certain instructional supports—such as tiered instruction and progress monitoring—they did not include any requirements directly tied to the Academic Success domain metrics ultimately used in the School

17

District's ACE evaluation framework, including student proficiency, academic growth, or attendance.

PMCS, after consultation with legal counsel, refused to sign the proposed one-year charter renewal agreement because the School District included unreasonable terms, including provisions that would allow the School District to unilaterally change evaluation criteria mid-term. PMCS attempted to negotiate these terms in good faith, but the School District refused to modify the agreement.

Despite refusing to sign the one-year charter renewal agreement in 2024, PMCS has substantially complied with all fourteen (14) conditions previously identified by the School District, including requirements related to:

- Universal Screening & Progress Monitoring
- Tiered Instruction & Interventions
- English Learner Identification
- Enrollment & Lottery Compliance
- Employee Handbooks & Clearances
- Statements of Financial Interest
- Board Governance & Training: Compliant
- Financial Reporting & Audits
- Montessori Mission Implementation

5/11/26 ACE-R, attached hereto as Exhibit B.

As retaliation for refusing to sign the School District's proposed one-year renewal agreement with fourteen (14) conditions, PMCS was compelled to undergo a new, formal renewal evaluation during the 2025-2026 school year and ultimately relied upon that process to recommend nonrenewal of PMCS' charter. The School District's nonrenewal recommendation was motivated, at least in part, by PMCS'

18

refusal to execute the proposed renewal agreement and by Plaintiff Smith's advocacy on PMCS' behalf.

Indeed, on or about July 20, 2026, the School District added Action Item 3 to the BOE's July 23, 2026 Action Meeting PMCS. *See* Action Item 3, attached hereto as Exhibit F. Included within Action Item 3 is the proposed Notice of Nonrenewal of PMCS' Charter ("Notice of Nonrenewal"). *See id*. A vote in favor of the Notice of Nonrenewal would thereby commence nonrenewal proceedings against PMCS.

## III.    ARGUMENT:

The Student Plaintiffs' Motion should be granted because the evidence submitted and balance of equities warrant the issuance of injunctive relief. The U.S. Court of Appeals for the Third Circuit has established four factors that courts must weigh in considering a motion for a temporary restraining order or a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting the preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting the preliminary relief will be in the public interest. *Shire U.S., Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir. 2003); *see also SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985).

Moreover, the Third Circuit Court of appeals recently reiterated, if the first two factors—referred to as the "gateway factors"—are established, the "court then determines in its sound discretion if all four factors, taken together, balance in favor

19

of granting the requested preliminary relief." *Amalgamated Transit Union Local 85 v. Port Auth. Of Allegheny Cty.*, 39 F.4th 95, 103 (3d Cir. 2022).

Here, the Student Plaintiffs readily satisfy both gateway factors. As discussed below, they have demonstrated a substantial likelihood of success on the merits of their federal constitutional and statutory claims, and absent immediate injunctive relief, they will suffer irreparable harm that cannot be remedied after the fact. The remaining equitable considerations likewise weigh decisively in favor of relief. Preserving the status quo pending adjudication of this action will impose little, if any, prejudice upon the School District, while preventing the initiation of charter nonrenewal proceedings that would fundamentally alter the educational opportunities available to the Student Plaintiffs before this Court has an opportunity to adjudicate their claims.

Accordingly, because all four factors favor the issuance of emergency injunctive relief, this Court should enter a Temporary Restraining Order, followed by a Preliminary Injunction, enjoining the School District from considering, voting upon, approving, or otherwise taking any action with respect to Action Item No. 3 on the agenda for the July 23, 2026 BOE meeting, thereby preserving the status quo pending further Order of this Court.

### A. The Student Plaintiffs are Likely to Succeed on the Merits of their Claims.

In determining whether a party is likely to succeed on the merits of their claim, a party seeking injunctive relief need only demonstrate a "reasonable probability" of success. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

At this stage, they are not required to prove their claims conclusively; rather, they need only show that their claims have a substantial basis in law and fact sufficient to warrant preservation of the status quo pending a final adjudication.

The Student Plaintiffs are likely to prevail on the merits because: (1) the School District's application of the Performance Framework constitutes intentional discrimination and deliberate indifference on the basis of race in violation of Title VI; (2) the School District treated the Students Plaintiffs differently by evaluating PMCS through the Performance Framework in violation of the Fourteenth Amendment to the United States Constitution (Equal Protection Clause); (3) the School District treated the Students Plaintiffs differently by evaluating PMCS through the Performance Framework in violation of the Equal Protection and Education Clauses of the Pennsylvania Constitution; (4) the School District's application of the Performance Framework has the effect of denying PMCS' students with disabilities meaningful access to PMCS' specialized Montessori-based educational program and related services in violation of Title II of the Americans with Disabilities Act; and (5) the School District's application of the Performance Framework has the effect of denying PMCS' students with disabilities meaningful access to PMCS' specialized Montessori-based educational program and related services in violation of Section 504 of the Rehabilitation Act.

Accordingly, because the Student Plaintiffs have demonstrated a reasonable likelihood of success on each of their federal and state constitutional and statutory

21

claims, the first prerequisite for the issuance of a Temporary Restraining Order and Preliminary Injunction is satisfied.

### i. *Plaintiff S.N. is Likely to Prevail on their Claim Under Title VI Against the School District.*

The School District is a recipient of federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Accordingly, the School District is prohibited from intentionally discriminating on the basis of race in administering its educational programs and activities.

PMCS' student body is overwhelmingly comprised of Black or African American students, and the Performance Framework applied by the School District to evaluate PMCS for renewal has a demonstrated disparate effect on charter schools serving disproportionately high percentages of racial minority students, as set forth above.

Plaintiff S.N. is a Black or African American student enrolled at PMCS and is an intended beneficiary of educational programs and activities receiving federal financial assistance. As alleged above, PMCS serves an overwhelmingly Black or African American and economically disadvantaged student population. The School District knew that the Performance Framework and renewal methodology it employed disproportionately and adversely affected charter schools serving predominantly Black or African American student populations.

Before recommending nonrenewal of PMCS' charter, the School District had actual knowledge, through the Ballard Spahr Report, Project RiSE, and Defendant Chao's own public statements, that the Performance Framework was inconsistent,

22

unreliable, inequitable, and productive of racially disparate outcomes, and continued to apply the Framework to PMCS notwithstanding that knowledge.

Despite that knowledge, the School District deliberately elected to continue to use and employ the same or substantially similar evaluation methodology in reviewing PMCS and recommending that its charter not be renewed, and rejected or declined to implement available alternatives designed to eliminate or reduce the methodology's known discriminatory effects. The School District intentionally maintained and applied that methodology despite knowing that it disproportionately affected charter schools serving predominantly Black or African American student populations and despite available alternatives under consideration through Project RiSE. The School District's decision to continue applying the challenged methodology was not inadvertent, negligent, or accidental. Rather, the School District intentionally adhered to and enforced a renewal process they knew would disproportionately burden predominantly Black or African American charter school communities, including PMCS, while continuing to exercise discretion over the design, application, weighting, and implementation of that methodology.

The School District intentionally treated PMCS and its students differently from similarly situated public schools by applying arbitrary, shifting, and inconsistently applied evaluation criteria that were not applied in an even-handed manner to similarly situated public schools and applied the challenged evaluation methodology in a manner that deprived Plaintiff S.N. the full and equal benefits of

a publicly funded educational program without regard to the foreseeable discriminatory consequences of those actions. Unlike traditional district-operated public schools, PMCS was evaluated under a charter-specific Performance Framework that incorporated evolving metrics, discretionary weighting, and changing comparator-school methodologies. The School District knowingly continued to employ this methodology despite its foreseeable discriminatory consequences and despite possessing the discretion to adopt more equitable alternatives.

The School District's continued application of the Performance Framework to PMCS, despite its actual knowledge of the Framework's racially disparate effect on charter schools serving predominantly Black and African American student populations, constitutes intentional discrimination and deliberate indifference on the basis of race in violation of Title VI. The recommendation to deny renewal of PMCS' charter, and the resulting threat of closure, directly and foreseeably deprive Plaintiff S.N. of the benefits of a federally funded educational program because of their race.

Accordingly, Plaintiff S.N. is likely to prevail on their claim under Title VI against the School District.

> ### ii. *The Student Plaintiffs are Likely to Prevail on their Claim Under the Equal Protection Clause Against the School District.*

24

The Student Plaintiffs are enrolled in a Pennsylvania public school and are entitled to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV, § 1.

The School District deprived the Student Plaintiffs of equal protection of the laws under the United States Constitution by intentionally subjecting the public school they attend to evaluation standards and renewal criteria that are materially different from those applied to students attending School District-operated public schools, thereby placing only charter school students at risk of losing access to their existing public educational program based upon those additional criteria. Specifically, the School District treated the Students Plaintiffs differently by evaluating PMCS through the Performance Framework, including Academic Success measures based upon proficiency, student growth, attendance, comparator-school analyses, and other internally developed metrics that are not used in determining whether students attending School District-operated public schools may continue attending their schools.

The School District intentionally adopted, implemented, and maintained the Performance Framework and intentionally applied that Framework to PMCS while choosing not to apply comparable evaluation criteria to School District-operated public schools. The School District also intentionally adopted, implemented, interpreted, and applied the challenged Performance Framework to PMCS using discretionary criteria, comparator-school selections, weighting methodologies, and

25

evaluation standards that were arbitrary, inconsistent, and materially different from those applied to similarly situated charter schools undergoing renewal review

The School District exercised substantial discretion in selecting comparator schools, assigning performance metrics, weighting evaluation criteria, and determining whether PMCS satisfied the Academic Success domain of the Performance Framework. Rather than applying objective and consistently administered standards, the School District intentionally employed shifting methodologies, changing comparator groups, discretionary weighting, and internally developed performance measures that lacked uniform application and operated to disadvantage PMCS.

The School District's exercise of that discretion was arbitrary, inconsistent, and materially different from the standards applied to School District-operated public schools. The School District also intentionally treated PMCS differently from similarly situated charter schools without any rational governmental justification for the disparate treatment. The School District acted under color of state law in adopting, implementing, and enforcing the challenged policies and practices. Even if no suspect classification applies, the School District intentionally subjected PMCS and its students to arbitrary and irrational governmental action that bears no rational relationship to any legitimate governmental objective.

The School District has no rational basis for imposing the challenged Performance Framework in the manner alleged herein, including the use of internally developed evaluation criteria, comparator-school methodologies, and

26

discretionary weighting mechanisms that are not required by the CSL and that directly determine whether students enrolled at PMCS may continue attending their chosen public school.

The School District intentionally administered the renewal process in a discriminatory and arbitrary manner toward PMCS, a predominantly Black or African American charter school, while treating similarly situated public schools differently. By administering fundamentally different accountability standards for PMCS than those applied to School District-operated public schools, and by doing so through an arbitrary and inconsistently applied methodology, the School District deprived the Student Plaintiffs of the equal protection of the laws guaranteed by the Fourteenth Amendment.

Accordingly, the Student Plaintiffs are likely to prevail on their claim under the Fourteenth Amendment to the United States Constitution (Equal Protection Clause) against the School District.

### iii.    The Student Plaintiffs are Likely to Prevail on their Claim Under the Equal Protection and Education Clauses of the Pennsylvania Constitution Against the School District.

Article I, Section 26 provides that neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right or discriminate in the exercise of any civil right. Pa. Const. art. I, § 26. Article III, Section 14 of the Pennsylvania Constitution states that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14.

27

As applied, the right to public education is a fundamental right under the Pennsylvania Constitution and any equal protection challenge thereto shall be examined under strict scrutiny. *See William Penn School District v. Pennsylvania Department of Education*, 294 A.3d 537, 959 (Pa. Cmwlth. 2023). Similar to an equal protection analysis under the Fourteenth Amendment of the United States Constitution, under the Pennsylvania Constitution, equal protection "demands that uniform treatment be given to similarly situated parties." *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1209-10 (Pa. 2020).

The Student Plaintiffs are students enrolled in PMCS, a public charter school established pursuant to the CSL and constituting part of Pennsylvania's public education system. Neither the CSL nor the Pennsylvania Constitution permits the School District to administer their authority through arbitrary, irrational, inconsistent, or discriminatorily applied methodologies that unnecessarily threaten students' continued access to a public education.

The School District exercised broad discretion in designing, modifying, weighting, and applying the challenged Performance Framework, including the selection of comparator schools, performance metrics, academic weighting, and other evaluation criteria. The School District exercised that discretion arbitrarily and inconsistently by applying shifting methodologies, internally developed criteria, changing comparator groups, and discretionary weighting systems that lacked objective standards, transparency, and uniform application.

28

Despite possessing actual knowledge that the challenged methodology was unreliable, inequitable, and under active reconsideration through Project RiSE, the School District nevertheless continued to employ that methodology in recommending that PMCS' charter not be renewed. The School District's arbitrary and irrational exercise of governmental authority threatens to deprive the Student Plaintiffs of continued access to their existing public educational program, disrupt their educational continuity, and eliminate their opportunity to continue receiving PMCS' unique public Montessori education.

The School District also deprived the Student Plaintiffs of equal protection of the laws and the equal educational opportunities guaranteed by the Pennsylvania Constitution by subjecting the public school they attend to materially different evaluation standards than those applied to students attending School District-operated public schools. Specifically, the School District employed the internally developed Performance Framework, including additional performance measures such as student growth, attendance, comparator-school analyses, and discretionary evaluation criteria, in determining whether PMCS could continue operating, while students attending School District-operated public schools were not subjected to comparable renewal standards.

The School District intentionally adopted, implemented, and enforced the Performance Framework in the manner alleged herein despite possessing substantial discretion regarding the methodology employed in evaluating PMCS. The School District has no compelling, or even rational, governmental justification

29

for applying materially different and discretionary evaluation methodologies that uniquely jeopardize the continued educational opportunities of students attending PMCS.

Together, the School District conduct deprived the Student Plaintiffs of their constitutional rights to equal protection of the laws under the Pennsylvania Constitution and equal educational opportunities guaranteed by the Pennsylvania Constitution.

Accordingly, the Student Plaintiffs are likely to prevail on their claim under the Equal Protection and Education Clauses of the Pennsylvania Constitution against the School District.

### iv. *Plaintiff L.R. is Likely to Prevail on their Claim Under Title II of the Americans with Disabilities Act Against the School District.*

The School District is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1). Plaintiff L.R. is a qualified individual with disabilities within the meaning of 42 U.S.C. § 12131(2).

As alleged above, PMCS serves a substantial population of students with disabilities who receive specialized educational services, accommodations, and related supports while enrolled at PMCS. The School District recommended that PMCS' charter not be renewed without meaningfully evaluating the impact that closure of PMCS would have upon those students or whether reasonably comparable educational services, accommodations, and supports would be available to them if PMCS ceased operations.

The School District knew that approximately twenty percent (20%) of PMCS' student population consisted of students with disabilities and nevertheless proceeded with the challenged renewal recommendation without undertaking any individualized or systemic assessment of the effect that nonrenewal would have upon those students.

The School District further knew that many of those students relied upon the continuity of specialized educational programming, established service providers, familiar instructional environments, and disability-related accommodations provided through PMCS.

The School District failed to consider the unique impact that nonrenewal would have upon students with disabilities or whether reasonable modifications to the renewal process were necessary to avoid unnecessarily burdening those students. The School District likewise failed to evaluate whether reasonably comparable educational services and supports would be available upon closure of PMCS or whether the challenged renewal methodology disproportionately burdened schools serving significant populations of students with disabilities.

The School District nevertheless proceeded with the challenged renewal recommendation despite knowing that closure would foreseeably disrupt established disability-related services, accommodations, educational continuity, and specialized programming relied upon by Plaintiff L.R.

The School District's evaluation and comparator-school methodology has the effect of denying PMCS' students with disabilities meaningful access to PMCS'

31

specialized Montessori-based educational program and related services. By administering its charter renewal process without reasonable modification or consideration of the unique needs of students with disabilities, the School District denied, or placed at imminent risk of denying, those students meaningful access to PMCS' specialized public educational program and related services. Nonrenewal of PMCS' charter would exclude PMCS' students with disabilities from participation in, and deny them the benefits of, PMCS' educational program, by reason of their disability. By recommending that PMCS' charter not be renewed without considering the unique needs of PMCS' students with disabilities or the availability of reasonably comparable educational services, the School District has subjected those students to a substantial risk of losing meaningful access to educational services and supports presently available to them because of their disabilities.

The School District intentionally failed to consider reasonable modifications or alternative approaches that would avoid or minimize the adverse impact of nonrenewal upon students with disabilities. The School District acted with deliberate indifference to the federally protected rights of Plaintiff L.R.

The harm alleged concerns the systemic effects of the School District's challenged renewal process upon students with disabilities enrolled at PMCS, including the threatened disruption of established educational supports, accommodations, related services, and continuity of educational programming. The challenged renewal process is a governmental program, service, or activity subject to Title II. By administering that process without reasonable modification and with

32

deliberate indifference to the known impact upon students with disabilities, the School District subjected the Student Plaintiffs to discrimination by reason of their disabilities.

The School District intentionally refused to consider reasonable modifications that would have avoided or minimized those disability-related harms. By reason of their disabilities, Plaintiff L.R. faces a substantially greater risk of disruption of educational services, specialized supports, accommodations, and related programming than nondisabled students. The School District acted with deliberate indifference to the federally protected rights of Plaintiff L.R.

Accordingly, Plaintiff L.R. is likely to prevail on their claim under Title II of the Americans with Disabilities Act against the School District.

### v. *Plaintiff L.R. is Likely to Prevail on their Claim Under Section 504 of the Rehabilitation Act Against the School District.*

The School District receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and is therefore subject to the requirements of Section 504.

Plaintiff L.R. is a qualified individual with disabilities within the meaning of 29 U.S.C. § 794(a). As alleged above, PMCS serves a substantial population of students with disabilities who presently receive educational services, accommodations, and related supports while enrolled at PMCS.

The School District recommended that PMCS' charter not be renewed without evaluating the effect that closure would have upon those students or

whether reasonably comparable educational services and supports would be available to them elsewhere within the School District. The School District knew that PMCS served a significant population of students with disabilities and nevertheless proceeded with the challenged renewal recommendation without conducting any meaningful assessment of the effect that nonrenewal would have upon those students.

The School District failed to evaluate the impact that nonrenewal would have upon students with disabilities or whether reasonable modifications to the renewal process were necessary to avoid unnecessarily burdening those students. The School District likewise failed to determine whether reasonably comparable educational services, accommodations, and related supports would be available if PMCS ceased operations.

The School District nevertheless proceeded with the challenged renewal recommendation despite knowing that closure would foreseeably disrupt disability-related services, accommodations, educational continuity, and meaningful access to educational benefits for students with disabilities.

The School District's evaluation and comparator-school methodology, has the effect of denying PMCS' students with disabilities meaningful access to PMCS' specialized Montessori-based educational program and related services, solely by reason of their disability. Nonrenewal of PMCS' charter would exclude PMCS' students with disabilities from participation in, and deny them the benefits of, PMCS' educational program, solely by reason of their disability.

The School District's recommendation that PMCS' charter not be renewed threatens to disrupt the educational services, accommodations, and supports presently available to Plaintiff L.R. and places them at substantial risk of losing meaningful access to educational benefits provided through a federally funded public education program.

The School District's renewal methodology failed to account for disability-related educational outcomes and/or penalized PMCS based on performance metrics that disproportionately reflect the educational needs of students with disabilities. The School District failed to consider reasonable alternatives or modifications that would have avoided or mitigated the foreseeable adverse effects of nonrenewal upon students with disabilities, despite possessing the discretion to do so.

By refusing to consider reasonable modifications or alternatives designed to avoid or minimize those disability-related harms, the School District denied Plaintiff L.R. meaningful access to federally funded educational programs and activities solely by reason of their disabilities. The School District acted intentionally and with deliberate indifference to the federally protected rights of Plaintiff L.R.

Accordingly, Plaintiff L.R. is likely to prevail on their claim under Section 504 of the Rehabilitation Act against the School District.

**B. The Student Plaintiffs Face Immediate and Irreparable Harm.**

The Student Plaintiffs face immediate and *per se* irreparable harm simply because the School District's actions violate Title VI of the Civil Rights Act of 1964,

35

the United States Constitution, the Pennsylvania Constitution, Title II of the

Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. . Those

ongoing constitutional and statutory violations, standing alone, strongly support the

issuance of preliminary injunctive relief.

Indeed, at the outset, the School District's use of the Performance Framework

plainly violates various statutory and constitutional provisions, which constitutes

*per se* irreparable harm, *see Hairston v. Hutzler*, 468 F.2d 621 (3d Cir. 1972)

(affirming principle that allegations of unlawful conduct in violation of a plaintiff's

constitutional rights are sufficient to support a finding of irreparable harm to

warrant injunctive relief). Moreover, "[t]he irreparable harm requirement is met if a

plaintiff demonstrates a significant risk that he or she will experience harm that

cannot adequately be compensated after the fact by monetary damages." *Adams v.

Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000).

Here, the School District is scheduled to vote on July 23, 2026 to commence

charter nonrenewal proceedings against PMCS. Absent immediate injunctive relief,

the status quo will be irreversibly altered before this Court has an opportunity to

adjudicate the Student Plaintiffs' constitutional and statutory claims.

The initiation of nonrenewal proceedings imminently threatens the Student

Plaintiffs' ability to continue receiving educational services at PMCS, the only

public Montessori educational program in the City of Philadelphia. PMCS is not

merely another public school—it is the educational community their families

deliberately selected because of its unique Montessori instructional model,

individualized learning environment, small-school setting, and demonstrated ability to meet their educational needs. PMCS is the only public Montessori charter school in Philadelphia, offering an educational program unavailable elsewhere within the School District. As such, the Student Plaintiffs face irreparable harm in that they will not be able to access any other Montessori educational program in the City of Philadelphia if the School District is not enjoined.

The threatened harm is neither speculative nor remote. Rather, the School District's scheduled vote will immediately and irreversibly trigger the statutory charter nonrenewal process, creating uncertainty regarding PMCS' continued operation and producing immediate consequences for the Student Plaintiffs, their families, faculty, and the broader school community.

Even before any final vote on renewal, the public commencement of nonrenewal proceedings creates substantial uncertainty regarding PMCS' future, undermining the Student Plaintiffs' confidence in their educational future at PMCS. This uncertainty triggers immediate operational consequences across four distinct and irreversible categories of harm, including, without limitation: (1) disruption of the Student Plaintiffs' educational continuity; (2) the potential loss of PMCS' unique Montessori educational model unavailable elsewhere within the School District; (3) the risk that students with disabilities will lose continuity of specialized services, accommodations, and related supports; and (4) the destabilization of PMCS through the potential loss of students, faculty, staff, and educational programming while the nonrenewal proceedings remain pending. None of these injuries can be adequately

37

compensated by monetary damages. These injuries are especially compelling because the School District seeks to initiate the nonrenewal process through the application of the challenged Performance Framework, which the Student Plaintiffs have demonstrated is likely unconstitutional and otherwise unlawful.

Accordingly, because the Student Plaintiffs have demonstrated both ongoing violations of their constitutional and statutory rights and immediate, concrete, and irreparable injury that cannot be remedied through monetary damages, the second prerequisite for preliminary injunctive relief is satisfied.

## C. Greater Injury Will Result if the Injunction is Denied than if Granted.

The Student Plaintiffs face far greater injury without an injunction than any alleged harm the School District would suffer if an injunction were granted. Indeed, if an injunction were not granted, the Student Plaintiffs would be subjected to the implementation of nonrenewal proceedings initiated through the application of the challenged Performance Framework, which they have demonstrated is likely unconstitutional and otherwise unlawful. Such charter nonrenewal proceedings would be unnecessarily disruptive and distracting to the Student Plaintiffs, who come from poor and/or historically disadvantaged neighborhoods and communities. The School District's actions will deprive the Student Plaintiffs of continued access to their existing public educational program, disrupt their educational continuity, separate them from established teachers, classmates, and support systems, jeopardize the unique Montessori educational program unavailable elsewhere within the School District, and interfere with disability-related services and

38

accommodations provided to students with disabilities, including Plaintiff L.R. The commencement of those proceedings also will immediately destabilize PMCS, create uncertainty regarding its future, and disrupt the educational environment upon which the Student Plaintiffs depend. These injuries are immediate, substantial, and incapable of being remedied through monetary damages.

In contrast, the School District would not suffer any harm if the vote on Action Item 3 was temporarily delayed pending this Court's disposition of the Student Plaintiffs' claims and the implementation of constitutionally adequate structural safeguards ensuring impartial adjudication. Indeed, the School District will suffer no cognizable harm from postponing its vote on Action Item 3 pending judicial review, as an injunction would merely maintain the status quo. *See One Three Five, Inc. v. City of Pittsburgh*, 951 F.Supp.2d 788, 807 (W.D. Pa. 2013) ("The primary purpose of preliminary injunctive relief 'is maintenance of the status quo until a decision on the merits of a case is rendered.'") (quoting *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994)).

Simply put, the balance of equities overwhelmingly favors the Student Plaintiffs. They face the immediate loss of educational continuity, unique educational opportunities, and important constitutional and statutory protections, whereas the School District faces only a temporary postponement of a single Board vote until the legality of its actions can be adjudicated.

**D. Granting the Preliminary Relief will be in the Public Interest.**

39

Last, a preliminary injunction will not adversely affect the public interest in any way. To the contrary, an injunction will advance the public interest by ensuring that any actions by the School District to willfully and intentionally violate Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and applicable federal and state constitutional and statutory law before such action irreversibly alters the status quo. *See Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024) ("Looking at the final factor of the traditional preliminary injunction test, the answer is clear: remedying an unconstitutional practice is always in the public interest.") (citation omitted).

The public has a strong interest in ensuring the School District is implementing a charter renewal process that does not violate the constitutional and statutory rights of hundreds of public-school students. The public likewise has a compelling interest in ensuring that public educational decisions affecting hundreds of students are made through fair, transparent, consistent, and lawful procedures.

An injunction preserves public confidence in the integrity of the charter school system and ensures that significant educational decisions are not made under legally deficient procedures that are inconsistent with federal and state law.

Moreover, granting preliminary relief will preserve the status quo while permitting this Court to resolve the important constitutional and statutory questions presented in this case before the School District commences charter nonrenewal proceedings that could irreversibly disrupt the education of hundreds of public-school students. Because the requested injunction merely delays a single

Board vote pending judicial review, while protecting fundamental constitutional and statutory rights, the public interest weighs decisively in favor of granting the requested relief.

## IV.   CONCLUSION:

Unless enjoined, the School District's actions will deprive the Student Plaintiffs of continued access to their existing unique public educational program, disrupt their educational continuity, separate them from established teachers, classmates, and support systems, interfere with disability-related services and accommodations provided to students with disabilities, such as Plaintiff L.R., and inflict irreparable educational and constitutional injuries that cannot be adequately remedied through monetary damages alone. The threatened loss of PMCS would also dismantle an educational community uniquely designed to serve the needs of its students and would irreversibly disrupt years of educational progress and established relationships.

Moreover, the School District's scheduled vote on July 23, 2026 will irrevocably alter the status quo by commencing charter nonrenewal proceedings before this Court has an opportunity to adjudicate the Student Plaintiffs' substantial constitutional and statutory claims.

Because the Student Plaintiffs have demonstrated a reasonable likelihood of success on the merits of their constitutional and statutory claims, that they will suffer immediate and irreparable harm absent injunctive relief, that the balance of equities weighs overwhelmingly in their favor, and that the public interest strongly

41

favors preserving the status quo pending judicial review, this Court should immediately enter a Temporary Restraining Order, followed by a Preliminary Injunction, enjoining the School District from considering, voting upon, approving, or otherwise taking any action with respect to Action Item No. 3 on the agenda for the Board of Education's July 23, 2026 Action Meeting, including any resolution authorizing or commencing charter nonrenewal proceedings against Philadelphia Montessori Charter School, pending further Order of this Court.

Respectfully submitted,

Dated: July 21, 2026

/s/ Mark E. Seiberling
Mark E. Seiberling (No. 91256)
Samantha G. Zimmer (No. 325650)
Miranda L. Dang (No. 330908)
Jonathan P. Rava (No. 332615)
Patrick Feeney (No. 334125)
**KLEINBARD LLC**
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Email: mseiberling@kleinbard.com
szimmer@kleinbard.com
mdang@kleinbard.com
jrava@kleinbard.com
pfeeney@kleinbard.com

Jeffrey R. Stacey (No. 310097)
O'DONNELL STACEY LLC
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422
Email: jeff@odonnellstacey.com

*Attorneys for Plaintiffs*

42